UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

STATE OF ILLINOIS *et al.*,

    Plaintiffs,

    v.

RUSSELL VOUGHT, *in his official capacity as Director of the Office of Management & Budget*, *et al.*,

    Defendants.

Case No. 26-cv-1566

Hon. Manish S. Shah

**PLAINTIFF STATES' REPLY IN SUPPORT OF
MOTION FOR EXPEDITED DISCOVERY**

## TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Background ............................................................................................................................ 3

Argument ............................................................................................................................... 6

I.    Jurisdictional discovery is appropriate on all claims. ........................................................ 6

II.    Discovery is appropriate on Plaintiff States' constitutional claims. ................................... 8

III.    Expedited discovery and completion of the administrative record are also appropriate under APA caselaw ........................................................................................ 9

IV.    28 U.S.C. § 1292(d)(4)(B) does not prevent the Court from granting expedited discovery. ........................................................................................................................ 11

V.    Expedited discovery should be ordered immediately. ..................................................... 13

Conclusion ........................................................................................................................... 14

## INTRODUCTION

Defendants' response to the motion for expedited discovery, ECF 34, and now their motion to transfer this case to the Court of Federal Claims, ECF 43, both confirm that expedited discovery should be ordered immediately. Defendants do not deny that the Targeting Directive exists, *see* ECF 34 at 4; ECF 43-1 at 23; and they surely would if they could. Yet they do not produce the Directive. Instead, they have produced a woefully incomplete administrative record that, among other failings, does not include any documents from the lead defendant agency, the Office of Management and Budget ("OMB"), that explain the agency action actually challenged in this suit: the Targeting Directive. Indeed, the administrative record produced alongside the motion to transfer focuses solely on grant terminations at CDC and explains that CDC asked "artificial intelligence" ("AI") to write up reasons that grants to Plaintiff States did not align with agency priorities. *Id.* at 8; ECF 44-3 at 139–147 (AR 139–147).[1] But defendants cannot evade their statutory responsibilities to produce an administrative record that is responsive to the challenged agency action by filing a record related to agency actions of their own choosing.[2] And, perhaps more importantly for instant purposes, defendants have now made a factual challenge to this Court's jurisdiction, but without submitting any facts on the key jurisdictional dispute in this case, namely, "whether the decision here amounts to internal guidance or pure grant termination." ECF 20 at 2; *Illinois v. Vought*, _ F. Supp. 3d _, 2026 WL 404014, at *1 (N.D. Ill. Feb. 12, 2026). The Court should order expedited discovery, or in the alternative completion of the administrative record, to make facts on that question available for the parties and the Court.

---

[1] AR refers to the Bates-stamped administrative record produced by defendants on February 23, 2026. For ease of reference, Plaintiff States also provide a citation to the Court's docket.

[2] Plaintiff States will provide a fulsome, substantive response to defendants' motion to transfer or dismiss, ECF 43, and address it here only to the extent that it bears on the request for discovery currently pending before the Court. Furthermore, as Plaintiff States noted at the February 18, 2026, status hearing, ECF 35, they intend to amend the complaint as of right.

1

This Court is fully empowered to order such discovery. Defendants' response to Plaintiff States' motion for expedited discovery does not engage with the Rule 26(d)(1) good-cause factors. Indeed, defendants do not cite Rule 26(d)(1) at all, forfeiting any argument under the pertinent legal standard. Instead, they focus exclusively on threshold arguments: They contend that this Court lacks jurisdiction and then draw the mistaken inference that, because they challenge the Court's jurisdiction, discovery would be inappropriate. ECF 34 at 3. Nor are defendants correct that the administrative record submitted alongside defendants' motion precludes the discovery that Plaintiff States seek. *Id.* at 5.

First, "[f]ederal courts have the jurisdiction needed to determine their own jurisdiction." *Word Seed Church v. Vill. of Hazel Crest*, 111 F.4th 814, 819 (7th Cir. 2024). "Jurisdictional discovery is an essential exercise of that jurisdiction." *Brown v. Montgomery*, 2025 WL 3679031, at *2 (7th Cir. Dec. 18, 2025). So defendants' factual challenge to this Court's jurisdiction *invites*, not precludes, expedited discovery. Second, this Court unquestionably has jurisdiction over Plaintiff States' non-APA claims—that is, the constitutional claims—so discovery is justified in exercise of that jurisdiction. Third, even on the APA claims, courts are empowered to order discovery or complete the administrative record when needed "in order to reconstruct the ground or contents of the agency's decision." *Cronin v. U.S. Dep't of Agric.*, 919 F.2d 439, 446 (7th Cir. 1990). Finally, defendants' motion to transfer this matter to the Court of Federal Claims, ECF 43, does not prevent the Court from ordering limited discovery pertinent to both the Court's jurisdiction and a forthcoming motion for preliminary injunctive relief.

Given the emergency posture of this case, which results solely from defendants' own actions, certain basic discovery should proceed immediately. Plaintiff States respectfully request that defendants be ordered to respond to the existing discovery requests by February 26, 2026.

**BACKGROUND**

On February 11, 2026, Plaintiff States filed a complaint after public reporting that OMB had issued an unlawful Targeting Directive commanding the Department of Health and Human Services ("HHS") and other agencies to imminently cut critical funding to Plaintiff States based on arbitrary political animus. ECF 1 ¶¶ 39–43. Plaintiff States immediately filed an emergency motion for temporary restraining order, ECF 3, to enjoin the Targeting Directive before dire consequences could ensue. Plaintiff States' instincts were correct, as defendants later issued notices which purported to make February 11 the last day of the period of performance on a range of grants issued to Plaintiff States by HHS component the Centers for Disease Control and Prevention ("CDC"). *See* ECF 44-9 at 50 to ECF 44-10 at 238 (AR 850–1238). On the morning of February 12, this Court held a hearing and soon after issued a 14-day written temporary restraining order. *See* ECF 20–21; *Illinois v. Vought*, 2026 WL 404014.

The Court's TRO opinion determined that "[m]ore factual development is necessary" to understand the nature of the agency action at issue in this case. ECF 20 at 3; 2026 WL 404014, at *3. Plaintiff States thus immediately reached out to defendants to request limited expedited discovery and the administrative record. *See* ECF 28-1 (Roller Decl.), ¶ 5. Defendants had no substantive response, *id.* ¶ 6, so on February 14, Plaintiff States moved for expedited discovery given the level of urgency in the case, ECF 28. The Court entered a minute order the next day continuing the motion and stating: "The government would be well advised to begin marshaling records (and nothing prevents the government from voluntarily producing materials in advance of 2/18/26)." ECF 30.

Defendants did not produce any materials or reach out to Plaintiff States to discuss factual development; rather, defendants opposed the motion in a February 17 filing that presents only legal argument about the Court's jurisdiction and the scope of APA review. *See* ECF 34.

3

At the February 18 status hearing, the Court extended the temporary restraining order through March 12 without objection from defendants. ECF 35. Additionally, the Court directed defendants to file a motion by Monday, February 23, to "start making a substantive showing to support their arguments of lack of jurisdiction." Ex. 1-A (transcript of Feb. 18, 2026 hearing), at 6:21–23, 14:8–12. The Court noted that "I need some facts from the government as to what decisions were made, and when, and through what process to even decide the jurisdictional point that the government is making." *Id.* at 4:18–21. The Court entered and continued Plaintiff States' motion for expedited discovery and ordered the parties "to meet and confer to discuss what facts the government intends to rely on in the forthcoming motion." ECF 35.

The parties spoke on the phone to meet and confer the next day, February 19, but, despite their assurances to the Court and to Plaintiff States, defendants were not prepared to "discuss what facts the government intend[ed] to rely on in the forthcoming motion." *Id.*; Ex. 1 (Supp. Roller Decl.) ¶¶ 5–10. Defendants could not or would not say what type of motion they planned to file on February 23 or what the underlying factual record in this matter might consist of. *See* Ex. 1 ¶¶ 6–8. Defendants stated that they planned to introduce facts tending to show that the "termination wasn't necessarily based on immigration policies," but could not explain what kinds of evidence they would use to make that argument, or from what sources they intended to gather such evidence. *Id.* ¶ 7. Defendants had no position to share on whether the Targeting Directive exists. *Id.* ¶ 10. When Plaintiff States asked whether defendants would meet and confer with them on Monday, February 23, to provide the information set forth in the Court's order, defendants' counsel stated that such a call would not be productive. *Id.* ¶ 11.

On February 23, defendants moved to transfer this case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631 or, in the alternative, to dismiss the case for lack of jurisdiction or

4

failure to state a claim. ECF 43. Alongside their motion, they filed an administrative record from CDC only. ECF 44. The administrative record contains no documents from defendant OMB other than Budget Data Request No. 26-09, without any resulting reports. *See* ECF 44-2. Instead, the heart of the current administrative record is undated "grant review reports" written by AI that set forth machine-generated reasons for terminating CDC grants to Plaintiff States based on "CDC's published priorities." *See* ECF 44-3 at 139 to ECF 44-6 at 2 (AR 139–552).[3] Although all the other documents in the AR index are dated, Defendants conspicuously do not say *on what date* they had AI produce four hundred pages of machine-generated reasoning for terminating Plaintiff States' grants. *See* ECF 43-1 at 8; ECF 44-2. A spreadsheet summarizing the AI output includes a table that identifies only the four Plaintiff States and totals the grants slated for termination in each. *See* ECF 44-6 at 17 (AR 567). The spreadsheet also contains a large, unexplained redaction box covering one of the columns. *See id.* at 3–22 (AR 553–572).

Defendants do not address in their administrative record or their memorandum of law why Plaintiff States and no other jurisdictions were targeted by the AI mass termination strategy—in other words, the Targeting Directive that is the actual object of this suit. *See* ECF 1 ¶ 4. Yet defendants notably stop short of denying the Directive's existence. There is no declaration from any official swearing that CDC acted independently. On the contrary, defendants concede that "it is hardly unusual for HHS and OMB to communicate about funding priorities." ECF 43-1 at 22. They hypothesize that the Targeting Directive could exist and argue that they would still be entitled to dismissal. *Id.* at 23. Yet defendants produce no documents that would actually shed light on the nature of the challenged Targeting Directive.

---

[3] The proper interpretation of the agency-priorities regulation, 2 C.F.R. § 200.340(a)(4), is currently the subject of litigation, including in *New Jersey v. U.S. Office of Mgmt. & Budget*, No. 25-11816-1T (D. Mass.), where opposing dispositive motions have been under advisement since December 5, 2025.

5

**ARGUMENT**

Plaintiff States should have the opportunity to take certain limited discovery before responding to defendants' motion to transfer and, similarly, before Plaintiff States must move for a preliminary injunction. Defendants present no argument about Rule 26(d)(1) in their opposition brief, thus forfeiting any possible rebuttal to Plaintiff States' argument that the good-cause factors for expedited discovery are present here. Instead, defendants focus exclusively on threshold contentions: their jurisdictional argument that this action belongs in the Court of Federal Claims, ECF 34 at 3, and their view that discovery is never permitted if a complaint pleads an APA claim, *id.* at 5–6. These arguments lack merit.

First, a factual argument against jurisdiction does not excuse a defendant from its discovery obligations; on the contrary, it necessitates immediate discovery on the jurisdictional question. Second, this Court unquestionably has jurisdiction over the constitutional claims in this suit, on which discovery is both permitted and necessary. Third, expedited and extra-record discovery is appropriate even in pure APA cases in some circumstances, such as when discovery is necessary "to ascertain the contours of the precise policy at issue," *Hisp. Affs. Project v. Acosta*, 901 F.3d 378, 388 (D.C. Cir. 2018) (quoting *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 928 (D.C. Cir. 2008)), or "to add evidence that is properly part of the record but was excluded" by the agency, *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 78 (D.D.C. 2018). Finally, the motion to transfer to the Court of Federal Claims does not stay the discovery that Plaintiff States seek.

**I.    Jurisdictional discovery is appropriate on all claims.**

Defendants contend that "substantial doubts as to jurisdiction" counsel against discovery "until [the Court] has assured itself of jurisdiction," ECF 34 at 4, but Seventh Circuit precedent says exactly the opposite. Once defendants have made a factual challenge to jurisdiction, "that factual dispute about the court's adjudicatory competency must be resolved," including through

6

"an evidentiary hearing" if necessary. *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020); *see also Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986) ("[T]he district judge must conduct whatever supplementary factual proceedings are necessary to resolve the doubt."); *Prakash v. Am. Univ.*, 727 F.2d 1174, 1179 (D.C. Cir. 1984) ("The court has considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction … ."). As the Seventh Circuit summed up just two months ago: "Federal judges have jurisdiction to determine their own jurisdiction. Jurisdictional discovery is an essential exercise of that jurisdiction." *Brown*, 2025 WL 3679031, at *2 (citation omitted). "[T]he court may be required to allow either cross-examination of witnesses or pre-hearing discovery if a party so requests." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015) (personal jurisdiction). If a "jurisdictional question cannot be resolved on the pleadings," then it is error to deny jurisdictional discovery. *Abelesz v. Magyar Nemzeti Bank*, 692 F.3d 661, 694–95 (7th Cir. 2012) (sovereign immunity).

APA cases are no exception. *Contra* ECF 34 at 5. It is true that adjudicating the *merits* of an APA claim is generally "based on the full administrative record that was before the [official] at the time he made his decision." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). And indeed, Plaintiff States continue to seek a *complete* administrative record to aid the parties and the Court in understanding the nature and reasoning of the decision at issue here. But even in APA cases, "[w]hen presented with a factual challenge to [jurisdiction], courts routinely consider affidavits and other evidence, and courts at times permit jurisdictional discovery." *Ranchers-Cattlemen Action Legal Fund v. U.S. Dep't of Agric.*, 573 F. Supp. 3d 324, 335 (D.D.C. 2021). Indeed, the United States has itself before urged a court to consider extra-record material

7

in deciding the question of jurisdiction over APA claims. *See Vargus v. McHugh*, 87 F. Supp. 3d 298, 302 (D.D.C. 2015).

Caselaw on factual challenges to subject-matter jurisdiction applies with full force here because defendants' challenge to jurisdiction *is* factual in nature. Defendants have cited a raft of documents outside the complaint, ECF 44, and contend that those documents "call[] the court's jurisdiction into question." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). A key factual question as to the Court's jurisdiction over Plaintiff States' APA claims then becomes whether defendants implemented "internal agency guidance," *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring), over which this Court retains jurisdiction. This Court has already concluded that defendants' public statements and pattern of conduct, as described in Plaintiff States' allegations, "plausibly suggest … final internal guidance articulating a basis to implement grant termination." *Illinois v. Vought*, 2026 WL 404014, at *2. Plaintiff States' request for discovery, or, in the alternative, completion of the administrative record, merely seeks to confirm that answer in order to resolve *NIH*'s application to the facts of this case. Plaintiff States ask defendants to produce the agency directives and memoranda at issue and basic details about the attempted grant terminations that resulted, *see* ECF 28-1 (Roller Decl.), Ex. A, ¶¶ 1–6, so that the parties and the Court can decide the issue based on facts.

**II.     Discovery is appropriate on Plaintiff States' constitutional claims.**

Next, the Tucker Act could not possibly oust this Court's jurisdiction over Plaintiff States' constitutional claims, and expedited discovery is appropriate to evaluate preliminary injunctive relief for those claims. District court jurisdiction over constitutional claims is "the creation of courts of equity, and reflects a long history of judicial review of illegal executive action." *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 327 (2015). In equity, "'suits for specific relief against officers of the sovereign' allegedly acting … 'unconstitutionally' are not barred by

8

sovereign immunity." *Pollack v. Hogan*, 703 F.3d 117, 120 (D.C. Cir. 2012) (quoting *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689, 693 (1949)); *see also Clark v. United States*, 691 F.2d 837, 840–41 (7th Cir. 1982). The Tucker Act limits this Court's jurisdiction over APA claims by restricting the APA's waiver of sovereign immunity, *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025), but Plaintiff States' constitutional claims do not depend on that waiver. Accordingly, the Tucker Act could not preclude the Court from considering them.

Plaintiff States are "entitled to discovery on [a constitutional] claim regardless of whether [they] can satisfy the 'strong showing' standard [for extra-record discovery] applicable to APA claims." *Cook Cnty. v. Wolf*, 461 F. Supp. 3d 779, 795 (N.D. Ill. 2020); *see also Am. First Legal Found. v. Cardona*, 630 F. Supp. 3d 170, 187 (D.D.C. 2022) (authorizing discovery where case involved claims under both the APA and the Mandamus Act and citing other examples); *Mayor & City of Baltimore v. Trump*, 429 F. Supp. 3d 128, 141 (D. Md. 2019) (holding that the APA did not govern whether discovery was available on constitutional claims even though plaintiff also alleged APA claims). All this Court must find in order to allow expedited discovery on those claims, therefore, is that the good-cause factors are met—which Plaintiff States demonstrated in their opening brief, ECF 28, and which defendants have conceded by failing to raise any contrary argument under the Rule 26(d)(1) standard.

### III. Expedited discovery and completion of the administrative record are also appropriate under APA caselaw.

In any event, expedited discovery, and alternatively, completion of the administrative record, is also appropriate on Plaintiff States' APA claims. The parties' dispute about the existence and nature of the Targeting Directive, in addition to its jurisdictional implications, is also a merits issue going to the "final agency action" element of Plaintiff States' APA cause of action. *See Matushkina v. Nielsen*, 877 F.3d 289, 292 n.1 (7th Cir. 2017); *Trudeau v. Fed. Trade Comm'n*,

9

456 F.3d 178, 184 n.7 (D.C. Cir. 2006). The Court can order discovery or, alternatively, completion of the administrative record on that merits issue.

First, under one line of APA cases, extra-record merits discovery is proper when "a key question in [the] case is 'whether the alleged [] policy in fact exists.'" *AFL-CIO v. Dept. of Labor*, 349 F.R.D. 243, 248 (D.D.C. 2025) (quoting *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 360 (D.C. Cir. 2005)); *see also Cronin*, 919 F.2d at 446 (holding that there are "unusual administrative review cases in which an evidentiary hearing is necessary in order to reconstruct the ground or contents of the agency's decision"); *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 2025 WL 3465518, at *37 (D.D.C. Dec. 2, 2025) (discovery permitted in APA cases to determine the "contours of the precise policy" challenged).

Whether the challenged policy exists is precisely the subject of the parties' factual dispute at this stage. Plaintiff States allege the existence of the Targeting Directive. ECF 1 ¶¶ 2, 4, 39. Defendants do not deny that it exists, but they say that "even if the posited OMB directive existed, it would not constitute final agency action." ECF 43-1 at 23. Defendants, in disputing the issue of final agency action but refusing all discovery on it, are "effectively asking [Plaintiff States] to accept [their] representation that there has been no final agency action, which essentially leaves [Plaintiff States] unarmed in [their] effort to thwart [the] motion to dismiss." *Sensient Flavors LLC v. Nat'l Inst. for Occupational Safety & Health*, 2008 WL 11383364, at *3 (S.D. Ind. Oct. 31, 2008). Plaintiff States have attempted to learn facts about OMB's actions from defendants through voluntary meet-and-confer discussions, but defendants did not provide any relevant information. *See* Ex. 1 (Supp. Roller Decl.). And now the filed administrative record adds nothing about the actions that OMB took to ensure that Plaintiff States, and only Plaintiff States, lost millions of dollars in funding. *See* ECF 44.

10

Neither the APA nor basic fairness allow defendants to hide the ball in this manner. Instead, the Court is empowered to order discovery to determine the scope of the agency action at issue. *See Sensient Flavors*, 2008 WL 11383364, at *3 (doing so). "To evaluate the reasonableness and lawfulness of Defendants' decision … this Court requires an adequate record of exactly what actions Defendants took," and it may "allow limited discovery" to create that record. *All. for Retired Americans v. Bessent*, 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025).

Second, under a related line of cases, the Court may order completion of the administrative record "to include evidence that should have been properly a part of the administrative record but was excluded by the agency." *Oceana*, 290 F. Supp. 3d at 77 (quotation omitted). "When parties move to complete, rather than supplement, the administrative record, no showing of bad faith is required and a plaintiff must only present clear evidence, which means a strong, substantial or prima facie showing that the record is incomplete." *Roe v. Mayorkas*, 2024 WL 5198705, at *2 (D. Mass. Oct. 2, 2024). Plaintiff States have made such a showing. The Court has already preliminarily concluded that OMB promulgated "final internal guidance articulating a basis to implement grant termination." ECF 20 at 2; *Illinois v. Vought*, 2026 WL 404014, at *2. Defendants' filings have done nothing to unsettle that conclusion. At a minimum, the administrative record should be completed to include the OMB documents that were "before [defendant Vought] at the time he made his decision." *Overton Park*, 401 U.S. at 420.

## IV. 28 U.S.C. § 1292(d)(4)(B) does not prevent the Court from granting expedited discovery.

Discovery is available notwithstanding defendants' request yesterday to stay this case under 28 U.S.C. § 1292(d)(4)(B). ECF 43. First, and most fundamental, "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). "Jurisdictional discovery is an essential exercise of that jurisdiction." *Brown*, 2025 WL 3679031,

11

at *2. Here, the requested discovery would "ensure[] a full and fair airing of the issues presented in the motion to transfer." *Friant Water Auth. v. Jewell*, 2014 WL 5325352, at *3 (E.D. Cal. Oct. 17, 2014). So this Court has authority to develop whatever facts it needs to determine whether any transfer to the Court of Federal Claims is, in fact, appropriate.

Second, as discussed above, Plaintiff States' constitutional claims are not subject to the Tucker Act, *see supra* pp. 8–9, and as a result cannot be transferred. Section 1292(d)(4)(B) "relates to transfer of an 'action,' not to severance and transfer of a claim," and if the district court retains any claims, the stay does not apply to those claims. *Far W. Fed. Bank, S.B. v. Dir., Off. of Thrift Supervision*, 744 F. Supp. 233, 236 (D. Or. 1990), *aff'd* 930 F.2d 883 (Fed. Cir. 1991). "There is not even arguable Tucker Act jurisdiction over" the non-APA claims, so "28 U.S.C. § 1292(d)(4) does not require a stay." *Id.*

Third, § 1292(d)(4)(B) does "not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary." In addition to preliminary relief itself, this exception extends to matters related to such relief. For example, a motion to intervene was properly considered during the 60-day stay where the intervenors "expressly sought to intervene for the limited purpose of being heard on [p]laintiff's motion for preliminary injunction." *Patriot Cont. Servs. v. United States*, 388 F. Supp. 2d 1010, 1014 n.1 (N.D. Cal. 2005); *see also Friant*, 2014 WL 5325352, at *2–3 (same). Similarly, a motion for preliminary class certification may be granted during the 60-day stay in order to provide preliminary notice to class members before a statute of limitations expires. *See Nigg v. United States Postal Serv.*, 2004 WL 7333090, at *3 (C.D. Cal. May 13, 2004).

The same principle authorizes expedited discovery here. The discovery sought is for the purposes of a preliminary injunction, exactly the type of matter exempted from § 1292(d)(4)(B).

12

As multiple courts have acknowledged, motions ancillary to the sought injunctive relief are equally appropriate for resolution. And "expedition is reasonably necessary," 28 U.S.C. § 1292(d)(4)(B), because failure to obtain discovery could hinder plaintiffs' ability to receive injunctive relief to preserve the status quo while litigation proceeds. Caselaw developed under Rule 26(d)(1)—which, again, defendants do not cite in their opposition brief—supports the necessity for expedited discovery in connection with a forthcoming preliminary-injunction motion. *See Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 554 (N.D. Ill. 2011) (first factor is "whether a preliminary injunction is pending").

V. **Expedited discovery should be ordered immediately.**

Last, defendants argue that "there is no need for the Court to entertain these matters on such an accelerated time frame." ECF 34 at 2. But there is a grave and pressing need. Plaintiff States face severe irreparable harm at the expiration of the current temporary restraining order on March 12 unless they can secure preliminary relief on a more permanent basis before that time. This case thus remains in an emergency posture solely because defendants are keeping it there. To be concrete, one proposed schedule for next steps in this matter would be:

- February 26: Defendants' production;
- March 2: Plaintiff States' first amended complaint;
- March 6: Plaintiff States' motion for a preliminary injunction;
- March 9: Defendants' opposition to Plaintiff States' motion;
- March 10: Plaintiff States' reply in support of their motion; and
- March 11: hearing on the motion for a preliminary injunction.

This schedule demonstrates the exigent nature of the situation before the Court.

Notwithstanding the foregoing, Plaintiff States would be willing to withdraw their request for expedited discovery at any time if defendants rescinded the Targeting Directive or stipulated to durable preliminary relief that would allow these discovery disputes to be litigated at a less frantic pace. Unless one of those things happens, Plaintiff States have no choice but to press

forward as quickly as possible to avert the severe irreparable harm that defendants' threatened actions would inflict on Plaintiff States and their residents.

## CONCLUSION

For the foregoing reasons, the Plaintiff States respectfully seek a court order:

1. Deeming served Plaintiff States' Requests for Production attached as Exhibit A to the Declaration of Katharine Roller, ECF 28-1, pursuant to Rule 26(d)(1);

2. Setting a deadline of February 26, 2026, for defendants to respond to Plaintiff States' First Requests for Production, pursuant to Rule 34(b)(2)(A); and

3. Setting a deadline of February 26, 2026, for defendants complete the administrative record at defendants OMB and HHS relevant to the Targeting Directive.

Dated: February 24, 2026

| | |
|---|---|
| **ROB BONTA** <br> *Attorney General of California* <br><br> By: */s/ Harald H. Kirn* <br> R. MATTHEW WISE* <br> KATHLEEN BOERGERS <br> *Supervising Deputy Attorneys General* <br> HARALD H. KIRN <br> CHRISTOPHER KISSEL* <br> CARTER JANSEN* <br> DAVID GREEN* <br> *Deputy Attorneys General* <br> California Office of the Attorney General <br> 1300 I Street <br> Sacramento, CA 95814 <br> 916-210-6111 <br> Harald.Kirn@doj.ca.gov <br> Christopher.Kissel@doj.ca.gov <br> Carter.Jansen@doj.ca.gov <br> David.Green@doj.ca.gov <br><br> *Counsel for the State of California* | **KWAME RAOUL** <br> *Attorney General of Illinois* <br><br> By: */s/ R. Henry Weaver* <br> CARA HENDRICKSON <br> *Executive Deputy Attorney General* <br> KATHARINE ROLLER <br> *Complex Litigation Counsel* <br> SARAH HUNGER <br> *Deputy Solicitor General* <br> SHERIEF GABER <br> MOLLY MAUCK <br> AKANKSHA SHAH <br> R. HENRY WEAVER <br> BRIANNA YANG <br> *Assistant Attorneys General* <br> Office of the Illinois Attorney General <br> 115 South LaSalle Street <br> Chicago, Illinois 60603 <br> (312) 814-3000 <br> Cara.Hendrickson@ilag.gov <br> Katharine.Roller@ilag.gov <br> Sarah.Hunger@ilag.gov <br> Sherief.Gaber@ilag.gov <br> Molly.Mauck@ilag.gov <br> Robert.Weaver@ilag.gov <br><br> *Counsel for the State of Illinois* |
| **PHILIP J. WEISER** <br> *Attorney General of Colorado* <br><br> By: */s/ David Moskowitz* <br> DAVID MOSKOWITZ <br> *Deputy Solicitor General* <br> Ralph L. Carr Judicial Center <br> 1300 Broadway, 10th Floor <br> Denver, CO 80203 <br> (720) 508-6000 <br> david.moskowitz@coag.gov <br><br> *Counsel for the State of Colorado* | **KEITH ELLISON** <br> *Attorney General of Minnesota* <br><br> By: */s/ Katherine Bies* <br> KATHERINE BIES <br> ED STOCKMEYER* <br> *Assistant Attorneys General* <br> Office of the Minnesota Attorney General <br> 445 Minnesota Street, Suite 600 <br> St. Paul, Minnesota 55101 <br> (651) 300-0917 <br> Katherine.Bies@ag.state.mn.us <br> Ed.Stockmeyer@ag.state.mn.us <br><br> *Counsel for the State of Minnesota* |

\* Pro Hac Vice Forthcoming