**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| STATE OF ILLINOIS *et al.*, | |
| Plaintiffs, | Case No. 26-cv-1566 |
| v. | Hon. Manish S. Shah |
| RUSSELL VOUGHT, *in his official capacity as Director of the Office of Management & Budget*, *et al.*, | |
| Defendants. | |

# EXHIBIT 1

Supplemental Declaration of Katharine Roller

## SUPPLEMENTAL DECLARATION OF KATHARINE ROLLER

I, Katharine Roller, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a resident of the State of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am Complex Litigation Counsel in the Office of the Illinois Attorney General. I am lead attorney for the State of Illinois in the above captioned matter.

3.      Attached as **Exhibit A** is a true and correct copy of the transcript of the status conference and hearing on Plaintiff States' motion for expedited discovery held on February 18, 2026, before Hon. Manish S. Shah.

4.      On February 18, 2026, the Court ordered defendants "to file a motion" by February 23, 2026. ECF 35. The Court further directed the parties "to meet and confer to discuss what facts the government intends to rely on in the forthcoming motion." *Id.*

5.      I accordingly contacted counsel for defendants to schedule a meet and confer, and the parties met telephonically on February 19, 2026, at 3:00 PM Central Time. Present on the call were myself, Henry Weaver, Molly Mauck, and Sherief Gaber for Plaintiff States and Michael Velchik for the federal defendants.

6.      At the meet and confer, I asked counsel for defendants what they planned to file on Monday, February 23. Defendants indicated that the filing would relate to jurisdiction and the Tucker Act but that they had no further information to share about its procedural posture.

7.      Counsel for defendants indicated that defendants planned to introduce facts tending to show that the "termination wasn't necessarily based on immigration policies."

8.      I asked counsel what form defendants' evidence would take, whether the evidence would extend beyond the termination letters themselves, and how such evidence

would be placed into the record. Defendants could not provide any further information.

9.      Counsel for defendants asked me whether there was a document called the Targeting Directive. I pointed to counsel to defendants' own statements to the press set forth in Plaintiff States' complaint and pending requests for production.

10.      I asked counsel, "What is your position on whether the Directive exists or not?" Counsel responded that he hoped defendants' position would be articulated in the upcoming filing, but that he had no further details to share.

11.      Given the above, I asked counsel if he wanted to meet and confer again on Monday to discuss the facts defendants intend to rely on in their anticipated motion per this Court's order (ECF 35). Counsel for defendants indicated that he hoped the filing on Monday would provide Plaintiff States with more information and that an additional meet and confer before the Wednesday status conference would not be productive.

12.      As of the date of this declaration, counsel for defendants has not provided any additional information outside of their filed motion (ECF 43), nor agreed to further meet and confer with counsel for Plaintiff States before the Wednesday status conference. Defendants have not produced any materials to Plaintiff States outside of their filed motion.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on February 24, 2026, in Oak Park, Illinois.


By: /s/ *Katharine Roller*
Katharine Roller
Complex Litigation Counsel
Office of the Illinois Attorney General

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STATE OF ILLINOIS; STATE OF CALIFORNIA; STATE OF COLORADO; and STATE OF MINNESOTA, | ) Case No. 26 C 1566<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | )<br>) |
| RUSSELL VOUGHT, in his official capacity as Director of the Office of Management & Budget, et al., | )<br>)<br>) Chicago, Illinois<br>) February 18, 2026 |
| Defendants. | ) 9:30 a.m. |

TRANSCRIPT OF PROCEEDINGS - STATUS HEARING
BEFORE THE HONORABLE MANISH S. SHAH

APPEARANCES:

For the Plaintiffs:    OFFICE OF THE ILLINOIS ATTORNEY GENERAL
ATTORNEY GENERAL KWAME RAOUL
SPECIAL LITIGATION BUREAU
BY:  MS. KATHARINE A. ROLLER
     MR. ROBERT H. WEAVER
     MS. MOLLY MAUCK
     MR. SHERIEF GABER
115 S. LaSalle Street, 35th Floor
Chicago, Illinois  60603

For the Defendants:   DEPARTMENT OF JUSTICE - CIVIL DIVISION
  (phone)             BY:  MR. MICHAEL VELCHIK
950 Pennsylvania Avenue, N.W.
Washington, D.C.  20530

Court Reporter:       COLLEEN M. CONWAY, CSR, RMR, CRR
Official Court Reporter
219 S. Dearborn Street, Room 1918
Chicago, Illinois  60604
(312) 435-5594
*colleen_conway@ilnd.uscourts.gov*

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

2

1     (Proceedings heard in open court:)

2          THE CLERK:  26 CV 1566, State of Illinois versus

3     Vought.

4          THE COURT:  Good morning.

5          Who do we have on behalf of plaintiffs this morning?

6          MS. ROLLER:  Good morning, Your Honor.  Katharine

7     Roller on behalf of plaintiff states this morning.

8          THE COURT:  Good morning.

9          And I understand counsel for the defense is on the

10    phone.  If we could just get your appearance for the record,

11    please.

12         MR. VELCHIK:  Good morning, Your Honor.  This is

13    Michael Velchik, counsel for United States defendants.

14         THE COURT:  Good morning.  So we should talk about

15    what next steps the parties have in mind.

16         I have seen the motion for expedited discovery and the

17    government's response.

18         In the government's response, it has no objection to

19    extending the TRO.  I was wondering what the government's

20    position would be on converting the TRO to a preliminary

21    injunction while we continue to develop the facts and maybe

22    attend to potential issues of changing the preliminary

23    injunction or TRO or vacating it if I don't have jurisdiction.

24         So let me -- Mr. Velchik, if I could ask you, what

25    would the government's position be on converting the TRO to a

1    preliminary injunction?

2            MR. VELCHIK:  Thank you.  Happy to address that.

3            Certainly, I think the current TRO has only been in

4    effect for less than a week, and so that has at least one week

5    to run.

6            As we explained in the brief, I can represent, on

7    behalf of my clients, that we don't oppose extending that

8    temporary restraining order for another two weeks with sort of

9    one caveat about the application of the order to the Defendant

10   President of the United States, just as a formal matter,

11   because we take the position that injunctions can't run against

12   the President, and he's also exempt from the APA.

13           In terms of extending it beyond that, I think our

14   initial position would be three weeks should be more than

15   enough time for us to brief some of these issues and get them

16   in front of the Court, particularly some of the threshold

17   issues on jurisdiction.  And hopefully we can agree on a

18   briefing schedule that can get all of those issues before the

19   Court before we need to engage in any sort of production of an

20   administrative record, much less discovery.  And I think that

21   would be our first line of response.

22           If it turns out that that briefing schedule may

23   require a longer timeline, I can certainly take it back to my

24   client agencies.  But I think it's reasonable to make sure

25   that, I guess, there's some sort of injunctive protection while

1    we try to determine some of these threshold issues.

2           But yeah, I would be amenable to taking that back to

3    my client agencies.  But, certainly, I think three weeks should

4    be enough time to get something in front of the Court.  Over.

5           THE COURT:  I imagine plaintiffs have no objection, at

6    a minimum, to an extension of the TRO for another two weeks

7    past the original two weeks?

8           MS. ROLLER:  That is correct, Your Honor, although not

9    if that is in exchange for not getting discovery.  We would

10   rather get the discovery and have it expire faster than the

11   other way around.

12          THE COURT:  Well, for now, I am going to extend the

13   TRO another two weeks, just to give us a little more time to

14   continue to discuss the threshold issues that are in the case.

15          With respect to discovery.  Whether there is an

16   administrative record to be produced or it's not as

17   straightforward as a traditional administrative record that can

18   be produced, it seems to me that I need some facts from the

19   government as to what decisions were made, and when, and

20   through what process to even decide the jurisdictional point

21   that the government is making.

22          So I would like to talk about what we can get

23   produced, even if it's not a complete production of what anyone

24   would consider the official administrative record, but enough

25   to start understanding where the facts may be that would allow

1   both sides to make their legal arguments about what next steps

2   ought to be.

3        So I suppose that's another question for the

4   government I had, which is, what can you produce either in

5   support of your forthcoming arguments about jurisdiction or to

6   allow everyone to understand what kind of record we might be

7   dealing with?

8        MR. VELCHIK:  Thank you for the question.

9        I think the assumption that we need records

10  immediately jumps the gun.  I mean, at this point, we haven't

11  had the opportunity to file a response, whether it's the

12  response to the temporary restraining order or file a motion to

13  dismiss.

14       Merely by filing something in front of the Court that

15  allows us to tell our side of the story, including the facts,

16  as we understand them, and how those would map on to some of

17  the legal arguments, I think that's sort of a threshold part of

18  this process that I think will narrow some of the issues and I

19  think can clarify where the parties stand.  But we're not even

20  there yet.  I think this case was filed a week ago.  And so --

21       I mean, our position would be, certainly, we should be

22  able to get something in front of the Court.  I think it could

23  take any number of procedural postures, whether it's a motion

24  to dismiss, a motion to transfer for want of jurisdiction, a

25  response to a potential filing by plaintiffs.  But I believe

1   our initial filing will be able to narrow some of the issues
2   and also bring to light what facts we can bear.

3          And if, after that point, the Court still finds that
4   there are, you know, factual questions that preclude a
5   determination of some of the even jurisdictional issues, maybe
6   at that point, you know, would be appropriate for an
7   administrative record.  And then only at that point, I think,
8   would discovery even be appropriate.  But it's still our
9   position that this is a record-of-review case under the APA.

10         But I think we would push back on the assumption that
11  even before the government has had the opportunity to file any
12  sort of responsive motion here that there necessarily are
13  factual uncertainties that merit the production of records at
14  this point.  Over.

15         THE COURT:  It would seem to me, from plaintiffs'
16  perspective, that having something from defendants would then
17  give you an opportunity to take aim at something a little bit
18  more concrete so you know what questions you should be asking
19  or where some documents might be.

20         So it's not -- doesn't seem unreasonable to see if I
21  can get something from the government where they start making a
22  substantive showing to support their arguments of lack of
23  jurisdiction or maybe a transfer of venue where they will have
24  to, I would imagine, lay out factually what their perspective
25  is on what decisions were made.  And then the plaintiffs may

1    then have an opportunity to say:  Well, that means we need to

2    look at a communication between person A and person B, or what

3    memo might have existed in HHS before this declarant, who is

4    saying that they did something, there might be a predicate step

5    there that we don't have access to, and we would like that.

6         So let me hear what the plaintiffs' reaction is to

7    what I understand the government to be saying, which is they'd

8    like to file something relatively soon to start teeing up the

9    facts from their perspective before I authorize a request to

10   produce or an interrogatory or the like.

11        MS. ROLLER:  Thank you, Your Honor.

12        So on the position that defendants have not had the

13   opportunity to do a substantive filing, I will note that the

14   filing last night is largely aimed at the merits of the Court's

15   jurisdiction, so -- and the arguments there do not rely on any

16   facts.  Defendants surely, as this case having been filed a

17   week ago, know whether the targeting directive exists or not,

18   but the motion just calls it "the hypothesized directive."

19        By the end of today, plaintiff states would like to

20   see the directive and to know where it went.  This is an urgent

21   situation.  And we -- as Your Honor pointed out, it's important

22   to allow everyone to understand what kind of record we're

23   dealing with and what kind of action we're dealing with.

24        For example, the TRO that was entered applies only to

25   public health funding, but defendants' public statements to the

1  press also mention the Department of Transportation and say

2  that further cuts are expected.

3       If we need to expand the TRO in order to protect

4  funding from the rest of the federal government, we need to

5  know that immediately.

6       So while we're not opposed to having a little bit more

7  time before production of an administrative record or, you

8  know, documents that went into the creation of a targeting

9  directive, seeing the directive itself is going to be very

10  important.  Also going to be very important to have a

11  productive meet-and-confer.

12       Without seeing the directive and knowing who received

13  it, it's really difficult for us to have a meet-and-confer and

14  to know what the scope of the discovery we're seeking will be.

15  That is the most helpful thing for clarifying the litigation

16  and moving the litigation forward that the government could do.

17       THE COURT:  The government's response to the motion

18  for expedited discovery says these are grant terminations.  I

19  would imagine that means that the government has readily, at

20  its fingertips, documentation to show what grant terminations

21  happened and what led to those grant terminations.

22       Whether there is, in fact, a document that could some

23  day be labeled a "targeting directive," I don't know, but there

24  must be some trail of decision-making that led to what the

25  government is saying are grant terminations.

1          So I wonder, Mr. Velchik, if the government can,

2     either in a meet-and-confer with plaintiffs' counsel or in a

3     filing with me within the next couple of days, start laying out

4     that factual history.

5          So that's a timing question and a substantive, what

6     documents can you marshal to inform the plaintiffs of what will

7     be coming from the defense perspective?

8          MR. VELCHIK:  Thank you, Your Honor.

9          I don't have additional facts beyond what was filed

10     last night or said at the last hearing.  But I will note, in

11     general, that this is not the first grants termination case

12     that's been brought against the government.  There have been

13     any number of cases for similar funds and much greater.

14          Typically, the government has argued that these are

15     grant termination cases subject to the Court of Federal Claims

16     under the Tucker Act.  And to the extent that plaintiffs have

17     sped around it through NIH or that district courts have

18     asserted jurisdiction over them, they've been litigated at the

19     TRO or preliminary injunction stage.

20          I'm not familiar with examples where there was

21     recourse to discovery at that early stage after the preliminary

22     injunction.  There have been administrative records in certain

23     cases.  That will include the, you know, notices that the

24     grants have been terminated, things of that sort.  But that is

25     typically how these cases have proceeded.  I don't know why

1    that would be any different here.

2         We also think that the fact that they've received --

3    plaintiffs have received now a three-week TRO protecting them

4    should cover the equities that they've articulated.

5         And the one point that I would emphasize is that even

6    if we got to the point where there was a preliminary injunction

7    and we were now proceeding through regular discovery, at most

8    in these grant termination cases, plaintiffs would be entitled

9    to that administrative record, as we've produced in similar

10   cases.  And so it strikes us as odd and unwarranted to allow

11   plaintiffs to seek expedited discovery for more or different

12   documents much earlier than they would in typical grant

13   termination cases just given the facts.

14        But I think that's roughly how we would see this case

15   playing out.  Over.

16        THE COURT:  In terms of timing, when were you thinking

17   you would file some sort of substantive filing, either as a

18   motion to dismiss or a motion to transfer?

19        MR. VELCHIK:  I think we would like to brief this, you

20   know, certainly while the TRO is in effect, and I think that

21   gives us three weeks.

22        We think that's more than enough time to get briefing

23   in front of the Court, whether it's a motion to dismiss or the

24   preliminary injunction.

25        And if the briefing takes longer -- you know, I

1    acknowledge the Court's suggestion at the opening of the

2    hearing of maybe bumping out the TRO to make sure that the

3    briefing cycle can be complete and that plaintiffs are

4    protected during the pendency of that litigation.  I think that

5    makes sense.

6         But I think we would like to move on that timeline to

7    resolve some of these threshold issues.  And, certainly, the

8    preliminary injunction is issued consistent with litigation in

9    other grant termination cases.  You know, the production of an

10   AR, that might be appropriate at that time.  But I think before

11   we start going beyond even what the administrative record

12   production would be, I think we would just respect the process

13   and go in that sequence.

14        THE COURT:  Well, what I am trying to get at is, what

15   process are you proposing to get things wrapped up within three

16   weeks?

17        So it's not -- I don't think it's a reasonable process

18   to say the government has three weeks to file something with

19   me, and that would be enough to get the issues fully or

20   sufficiently aired so that I can make some sort of decision.  I

21   think if I were to accept that we need to take a few weeks to

22   drill down on these things, that means that I am getting

23   multiple filings within those three weeks.  And I am inclined

24   to give the government the next salvo here, but it would -- I

25   think it would be in the next couple of days, at most, to then

1    keep things moving, so that we can have it at least adequately

2    briefed before the expiration of any TRO.

3           So I'll phrase my question a little differently and

4    instead say, can you get something on file by Monday, the 23rd

5    or Tuesday, the 24th?

6           MR. VELCHIK:  Yes.  I think that's consistent with,

7    you know, my understanding.

8           We would want the briefing completed during the time

9    of the TRO.  I didn't mean to suggest that we would take three

10   weeks to do an initial brief.

11          I mean, I work for the government, so obviously I'll

12   take this back to our team just to confirm, but yes, I think

13   getting the ball rolling with, you know, a brief that would

14   resolve this, the timeline that the Court suggests, 23rd, 24th

15   -- so that's early next week -- yeah, I think that's a

16   reasonable way to get the ball rolling and get this resolved

17   during that three-week time frame.

18          THE COURT:  Are you in a position to have a

19   conversation with plaintiffs' counsel before a filing to talk

20   to them about what you're expecting to be relying on factually

21   for the positions that you'll be taking in the filing?

22          That might speed things up as we move things along.

23          MR. VELCHIK:  Yes.  We can make ourselves available to

24   meet and confer with plaintiffs.

25          MS. ROLLER:  Your Honor, if I may?

1    It is not merely a question of counsel's availability.

2  It is a question of, will they be prepared at that

3  meet-and-confer to tell us what decision was made, on what

4  basis, by what process, and to whom was it disseminated?

5    If they don't have that information, it's hard to see

6  how a meet-and-confer would be productive.

7    THE COURT:  Mr. Velchik, do you have that kind of

8  information at your fingertips?  Or, can you have that kind of

9  information at your fingertips in the next day or so?

10    MR. VELCHIK:  I don't have that information right in

11  front of me.  But, I mean, to the extent that the Court

12  schedules a meet-and-confer with plaintiffs, I mean, we can try

13  and order, you know, our fact-gathering to try and have that.

14    THE COURT:  Okay.

15    MS. ROLLER:  Your Honor, I --

16    THE COURT:  Go ahead.

17    MS. ROLLER:  I hate to interrupt, but I noticed that

18  Mr. Velchik said that they would try.  And while I do

19  appreciate their efforts, I think we really need to have a

20  commitment on this.

21    It would be a shame if those efforts did not pan out

22  in time for this to be a productive conversation.

23    THE COURT:  Maybe.  But if I am getting a filing on

24  Monday or Tuesday, if you have unproductive conversations that

25  are not satisfying to you, and the government isn't telling you

14

1   what they're relying on, if we get something by Monday or

2   Tuesday of next week, it will hopefully be useful then.

3          And I do take into account the notion that things are

4   moving fairly quickly and Mr. Velchik may need to get the

5   attention of people who may not be willing to give him their

6   attention in that way, at least to plaintiffs' satisfaction, in

7   the next couple of -- next few hours.

8          So what we'll do is the government has leave to file

9   its motion to dismiss, motion to transfer, motion to vacate

10  TRO -- you can choose your procedural vehicle, Mr. Velchik, but

11  you will file that by midnight on the 23rd, or meaning the

12  night of the 23rd.

13         And then let's have another conference on Wednesday,

14  the 25th, if people are available --

15    (Counsel nods.)

16         THE COURT:  -- and if we are available.

17         MS. ROLLER:  Plaintiffs' counsel is available.  Thank

18  you, Your Honor.

19         THE CLERK:  Excellent.  Everyone, I would suggest --

20  why don't we do 9:30 a.m. again.  Would that work for you?

21         MS. ROLLER:  Perfect.

22         THE CLERK:  And will that work for you, Mr. Velchik?

23  So it'd be 9:30 --

24         MR. VELCHIK:  Yes.  I'll --

25         THE CLERK:  -- Chicago time.

1        MR. VELCHIK:  -- make myself available.

2        THE CLERK:  Thank you.

3        MR. VELCHIK:  Yes, that works.

4        THE COURT:  So by that time, I will have seen what the

5    government's filing is.  You will have had some time to digest

6    it yourselves.  And hopefully -- and I will direct counsel on

7    both sides to meet and confer in advance of the government's

8    filing to discuss what factual representations the government

9    intends to rely on in its forthcoming motion.

10        And so, hopefully, you'll have that conversation,

11   you'll have the government's filing, and then on Wednesday, the

12   25th, we can talk about what next steps make sense, whether

13   it's another brief from the plaintiffs or something else, and

14   we'll keep things moving along on that pace.

15        The new expiration of the TRO is March 12th.

16        MS. ROLLER:  Your Honor, I hate to throw a wrinkle

17   into this plan, but just wanted to make you aware of one

18   additional sort of factor, which is that plaintiffs are

19   intending to file an amended complaint to take into account the

20   developments that have happened since the first complaint was

21   filed.

22        We don't wish to disrupt the Court's schedule, but if

23   defendants are filing a motion to dismiss, they might find it

24   productive to see the amended complaint first.  But then, of

25   course, the amended complaint, we would like to have the facts

1    that defendants have in it.

2           So to the extent that that informs Your Honor's

3    thinking on this.  I just wanted to make sure that it didn't

4    come as a surprise.  We didn't want to ambush defendants and

5    have them do a motion to dismiss and then, a few days later,

6    there would be an amended complaint.  That would be sharp

7    practice.

8           THE COURT:  When do you think you're going to file an

9    amended complaint?

10          MS. ROLLER:  Well, this is the thing, Your Honor.  An

11   amended complaint should contain what was the decision, when

12   was it made, to whom was it disseminated, so we think it would

13   make sense to have that information from defendants.  And if --

14   makes sense.  We think it's necessary to have that information

15   from defendants before we can amend.

16          So if defendants can produce that this week, we can do

17   an amended complaint next week, of course.  But, otherwise, it

18   will have to wait until defendants produce.

19          THE COURT:  I think it'll have to wait.  I think we'll

20   see what the defense files and then we'll talk on Wednesday,

21   the 25th, and we can talk about the timing of an amended

22   complaint at that point.

23          And, again, I appreciate the government's willingness

24   to extend the TRO a little bit to give everyone some room to

25   continue to investigate the facts and hone in on the arguments

1    that will be most productive in moving the case forward.

2              So we'll stick with that plan.

3              MS. ROLLER:  That sounds good, Your Honor.  Thank you.

4              THE COURT:  Mr. Velchik, is there anything else we

5    should cover this morning from the government's perspective?

6              MR. VELCHIK:  Nothing from the government other than

7    to thank the Court and the clerk for accommodating appearance

8    by telephone.  Over.

9              THE COURT:  That's fine.  Anything further from

10   plaintiffs?

11             MS. ROLLER:  Nothing from us, Your Honor.  Thank you

12   very much.

13             THE COURT:  Thank you.  We're in recess.

14      (Proceedings concluded at 9:59 a.m.)

15

16

17

18                    *      *      *      *      *

19

20           I certify that the foregoing is a correct
     transcript of the record of proceedings in the above-entitled
     matter.

21

22

23

     _/s/ Colleen M. Conway, CSR, RMR, CRR_          _02/18/2026_
24            Official Court Reporter                    Date
           United States District Court
25         Northern District of Illinois
                 Eastern Division