**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS *et al.*, | |
| Plaintiffs, | Case No. 26-cv-1566 |
| v. | Hon. Manish S. Shah |
| RUSSELL VOUGHT, *in his official capacity as Director of the Office of Management & Budget*, *et al.*, | |
| Defendants. | |

# EXHIBIT 20

Declaration of Clayton Kuetemeyer

## DECLARATION OF CLAYTON E. KUETEMEYER

I, Clayton E. Kuetemeyer, pursuant to 28 U.S.C. § 1746, hereby declare:

1. I am over the age of eighteen and understand the obligations of an oath.

2. I am currently the Deputy Director of the Illinois Emergency Management Agency and Office of Homeland Security ("IEMA-OHS"). I have held this role since 2023. I am responsible for providing oversight on behalf of the Director of all Emergency Management programs applicable to the State of Illinois. These include disaster recovery programs such as public assistance and hazard mitigation through coordination with the Federal Emergency Management Agency ("FEMA") for Illinois project applicants. I make this declaration based on my personal knowledge, on information I acquired through the performance of my duties at IEMA-OHS, and on my review of records maintained in the ordinary course of business by IEMA-OHS.

3. IEMA-OHS is an Illinois executive-branch state agency. IEMA-OHS coordinates the State's disaster mitigation, preparedness, response, and recovery programs. As the primary grantee of FEMA in Illinois, IEMA-OHS administers a wide range of federal programs meant to assist states and localities in preventing and responding to catastrophic events like natural disasters and pandemics.

4. Under the structure of FEMA grant programs, IEMA-OHS must submit reimbursement requests to FEMA. Only after FEMA processes and remits a reimbursement request can IEMA-OHS disburse payment to vendors and sub-grantees. As such, when FEMA delays or entirely fails to process reimbursements and obligate funds, IEMA-OHS cannot provide any funds to sub-grantees.

**I.   Post-Disaster Public Assistance Programs**

5. FEMA provides critical funding to assist Illinois communities after major disasters.

1

6. Specifically, several FEMA grant programs are tied not to an annual application process but rather to a presidential declaration of a major disaster under the Stafford Disaster Relief and Emergency Assistance Act ("Stafford Act"). 42 U.S.C. § 5121 *et seq.* Typically, a State's governor sends a request for a disaster declaration to FEMA, and the President then either grants or denies the request. The President can also declare a major disaster without a governor's request.

7. Further, under the Stafford Act funding process, a presidential major disaster declaration makes the recipient and sub-applicants potentially eligible for funding, but FEMA does not incur any obligation until the approval and review process for each grant is complete.

8. In Illinois, seven major disasters, as declared by the President, have active or pending FEMA awards at this time, listed below according to their major disaster declaration number ("DR"):

    a. DR-4116: Severe storms, straight-line winds, and flooding that took place across northern and central Illinois between April 16, 2013 and May 5, 2013;

    b. DR-4461: Severe storms and extended-duration flooding that took place in many western Illinois counties along the Mississippi and Illinois Rivers during the period February 24, 2019 to July 3, 2019;

    c. DR-4489: The disaster declaration for the COVID-19 pandemic, which lasted for the period January 20, 2020 to May 11, 2023;

    d. DR-4676: Severe storms and flooding that took place in St. Clair County during the period July 25, 2022 to July 28, 2022;

   e. DR-4728: A derecho event causing severe storms and flooding that took place in many central Illinois counties during the period June 29, 2023 to July 2, 2023;

   f. DR-4749: Severe storms and flooding that took place in Cook County during the period September 17, 2023 to September 18, 2023; and

   g. DR-4819: Severe storms, tornadoes, straight-line winds, and flooding that took place in seven Illinois counties during the period July 13, 2024 to July 16, 2024.

9. In total, as to the seven major disasters above, FEMA has awarded over $2.4 billion in federal funds through IEMA-OHS to help Illinois communities recover from these devastating events. FEMA has allocated these funds via IEMA-OHS primarily through two Stafford Act grant programs: the Public Assistance Program and the Hazard Mitigation Grant Program.

*Public Assistance Program*

10. I am familiar with the Public Assistance Program. After the President makes a major disaster declaration, the Public Assistance Program provides federal funding to states and other eligible recipients to help communities pay for emergency work in the immediate aftermath of a disaster as well as to complete more long-term recovery work.

11. Specifically, emergency work immediately after a disaster includes extraordinary life-saving measures like search and rescue and distribution of food aid, as well as debris removal. In the longer term, Public Assistance "permanent work" refers to efforts to repair eligible roads, bridges, water control facilities, buildings and equipment, utilities, ports, recreational areas, and other physical infrastructure.

12. IEMA-OHS, as the state recipient for Public Assistance funds, develops a list of impacts that the disaster had on Illinois. FEMA and IEMA-OHS work together to develop detailed

damage descriptions, which ultimately become the basis on which FEMA determines the amount of funding that will be made available.

13. FEMA awards funds based on the validated cost of the scope of work developed by IEMA-OHS and approved by FEMA. Typically, FEMA reimburses eligible applicants for at least 75% of eligible costs that were a direct result of the disaster incident, with the state recipient responsible for the remaining 25%.

14. In addition to using Public Assistance funds themselves, states may pass Public Assistance funds through to sub-grantees as part of the approved scope of work.

15. By following the above process, FEMA has allocated Public Assistance funds to Illinois each time the President has declared a major disaster in Illinois.

16. IEMA-OHS has four open Public Assistance awards:

   a. DR-4116: Award of $32,677,038.53;

   b. DR-4461: Award of $67,208,327.48;

   c. DR-4489: Award of $2,370,646,115.87; and

   d. DR-4728: Award of $22,847,706.96.

17. IEMA-OHS intends to continue to apply for Public Assistance funds whenever there is an eligible major disaster affecting Illinois, which could happen at any time.

18. The Public Assistance Program has proven indispensable to Illinois, helping its communities save lives, recover faster, and rebuild stronger and more resilient systems in the face of devastation. From restoring electrical infrastructure damaged by powerful derechos to deploying medical surge staffing during a historic pandemic, the program ensures that vital public services can be quickly stabilized and rebuilt. Disaster relief and recovery would proceed more slowly without federal Public Assistance funding.

19. For example, disaster DR-4728 was declared after the June 29, 2023, derecho that swept across Illinois causing significant damage to critical infrastructure, particularly to the City of Springfield's power transmission and distribution system. The storm damaged dozens of utility poles—ranging from 30-ft wood poles to 100-ft steel poles—and over 60 electrical transformers of varying capacities. Wind and rain also tore through vital sub-assemblies and nearly 3,500 linear feet of conductor wire, severely disrupting power services. The City of Springfield promptly undertook full restoration efforts. The total cost of this recovery effort amounted to $7,378,332.41. Through the Public Assistance Program, 75% of the eligible costs—totaling $5,533,749.31—was federally funded, significantly aiding local recovery and reinforcing the resilience of Illinois' electrical infrastructure following this severe weather event.

20. Under disaster DR-4489, Illinois undertook a massive expansion of inpatient capacity to provide critical care during the peak of the COVID-19 public health emergency, incurring a total eligible cost of $386,596,484.65. Managed by the Illinois Department of Healthcare and Family Services as a sub-grantee of IEMA-OHS, this project involved the deployment of over 178,000 hours of contracted medical and support staffing to 171 healthcare facilities across the state from January 2021 to June 2022. Staffing included a wide range of medical professionals and support roles, forming strike teams to meet urgent regional needs. This project, fully funded at 100% federal share, highlights FEMA's role in supporting Illinois' pandemic surge staffing program through the Public Assistance Program.

21. During the 2019 DR-4461 flooding, the Illinois Department of Natural Resources ("IDNR") sustained significant impacts across its managed sites, leading to 119 documented damages with a total signed cost of $5,269,762.50. Through Public Assistance funds, IDNR as a sub-grantee of IEMA-OHS received a federal share of $3,991,228.97 to address these damages.

This funding addressed issues ranging from emergency protective measures and debris removal to the repair of critical infrastructure like levees, roads, and utilities within state parks and natural areas affected by the severe flooding.

22. Beginning in June 2025, the federal government has failed to obligate over $103,822,075 to reimburse Illinois for funds spent under the State's open Public Assistance awards.

23. The delay in receipt of this funding for Public Assistance projects has caused serious harm to the State. Because the State does not have the budgetary resources or flexibility to make up for the lost federal funding, the delay forces IEMA-OHS and its sub-grantees to suffer additional financial burdens. For example, municipalities often must divert funds away from essential public services such as police, fire, and road maintenance or secure short-term financial bridge loans or lines of credit to pay for emergency level repairs.

*Hazard Mitigation Grant Program*

24. I am familiar with the Hazard Mitigation Grant Program ("HMGP"). After the President makes a major disaster declaration, HMGP provides federal funding to states to develop Hazard Mitigation Plans and rebuild in a way that reduces future disaster losses in the communities affected by the declared disaster.

25. In addition to using HMGP funds themselves, states may pass HMGP funds through to sub-grantees for the same purposes. Local governments as well as eligible private, nonprofit organizations apply to IEMA-OHS, which in turn sends applications on to FEMA for approval.

26. FEMA requires state, local, tribal, and territorial governments to have approved and adopted Hazard Mitigation Plans to be eligible for certain types of non-emergency disaster assistance, including funding for HMGP projects. Jurisdictions must update their Hazard Mitigation Plans and resubmit them for FEMA approval every five years to remain eligible.

27. Because HMGP grants are formula grants and not competitive grants, a recipient is entitled to a specific allocation determined by regulation following a major disaster declaration.

28. Under most circumstances, HMGP grantees and sub-grantees may not begin work under a grant until FEMA obligates funding for that project. Any work performed outside of allowable pre-obligation activities, such as construction, may be deemed ineligible for reimbursement by FEMA if completed prior to obligation.

29. IEMA-OHS administers HMGP funding in Illinois and has five open HMGP awards:

   a. DR-4461: Award of $11,558,331.78;

   b. DR-4489: Award of $64,354,320.00;

   c. DR-4676: Award of $4,110,099.00;

   d. DR-4728: Award of $51,969,376.53; and

   e. DR-4749: Award of $9,503,930.82.

30. IEMA-OHS is in the process of applying for an HMGP award under disaster DR-4819, with a HMGP request of $25,823,318.26, which remains under FEMA review.

31. IEMA-OHS intends to continue to apply for HMGP funds whenever there is an eligible major disaster affecting Illinois, which could happen at any time.

32. HMGP funds are invaluable to the State's local mitigation preparedness and planning efforts. For example, in St. Clair County, which has been hit with three presidentially declared major disasters in recent years, IEMA-OHS has multiple active grants to address the needs of the repetitively flooded areas, including by identifying projects that would mitigate the flooding going forward and help prevent the need for future funding.

33. As another example, the Addison Creek Reservoir and the Addison Creek Channel improvements are two connected flood control projects that will work together to significantly benefit communities in western Cook County along Addison Creek, including Bellwood, Northlake, Stone Park, Melrose Park, Westchester, and Broadview. The 600-acre-foot Addison Creek Reservoir will hold 195 million gallons of storage capacity and connect with the Addison Creek Channel to protect the communities from overbank flooding. This project's total cost is $60,967,301. IEMA-OHS estimates that the project will have $93,125,730 in benefits, paying for itself. This project is ongoing.

34. Beginning in May 2025, the federal government has failed to obligate over $59,126,555 to reimburse Illinois for funding spent under the State's open HMGP awards.

35. FEMA has implemented enhanced review requirements for projects with budgets exceeding $100,000, which significantly extended processing times for reimbursement requests. Additionally, the federal government shutdowns in late 2025 and early 2026 contributed to further delays in communication and funding timelines. Sub-applicants are experiencing protracted delays in receiving approval and crucial funding for HMGP projects.

36. The delay in the obligation of funding for ongoing HMGP projects has caused serious harm to the State. Because grantees and sub-grantees may not work on a project until FEMA obligates funding for that project, many jurisdictions have been forced to delay mitigation activities, in some cases for multiple years. These delays hinder progress toward a more resilient Illinois.

37. Further, many counties depend on HMGP funding to complete their required Hazard Mitigation Plan updates, and the delay in federal funding has resulted in the expiration of several counties' Plans. Without a current FEMA-approved Hazard Mitigation Plan, counties

become ineligible for future HMGP funding. Restoring eligibility requires updating and securing FEMA approval of the Plan, a process that typically takes 18 to 24 months.

## II. Flood Mitigation Assistance

38. FEMA also provides financial assistance in the form of grants for planning and carrying out activities designed to reduce the risk of flood damage to structures covered under contracts for flood insurance with the National Flood Insurance Program, with a focus on eliminating the risk of repetitive flood damage via Flood Mitigation Assistance ("FMA").

39. Investments in flood mitigation help to significantly minimize the risk of flooding and the severity of the impacts from flood events, which can reduce the need for state or federal disaster declarations and recovery costs.

40. IEMA-OHS administers FMA funding in Illinois.

41. FMA grants are awarded on a competitive basis to specific sub-applicants, which are generally units of local government. Units of local government present flood mitigation plans to IEMA-OHS, which IEMA-OHS reviews and presents in one combined application to FEMA. FEMA then makes awards based on IEMA-OHS's ranking of the projects, project eligibility, and cost-effectiveness of the projects.

42. Under most circumstances, FMA grantees and sub-grantees may not begin work under a grant until FEMA obligates federal funding for such project. Any work performed outside of allowable pre-obligation activities, such as construction, may be deemed ineligible for reimbursement by FEMA if completed prior to obligation.

43. Illinois has applied for and received FMA funds on many occasions since its creation in the National Flood Insurance Reform Act of 1994.

44. IEMA-OHS has three open FMA awards:

    a. FFY 2019: Award of $1,929,926.90;

9

   b.  FFY 2021: Award of $2,158,695.00; and

   c.  FFY 2022: Award of $373,210.50.

45. On April 18, 2025, IEMA-OHS submitted its application for FFY 2024 FMA funds.

46. IEMA-OHS intends to apply again for FMA funds in FFY 2025.

47. FMA funds help units of local government in Illinois to build planning and management capacity and to undertake both localized and individual flood mitigation projects. Localized projects include drainage pipes, pump stations, grading, and seawalls to reduce flood risk in a localized area. Individual flood mitigation operates at the property level, for instance by allowing local governments to acquire flood-prone properties so that the owners can relocate.

48. For example, Machesney Park, Illinois, is using FMA funding to acquire and demolish 17 flood-prone properties. These properties will be returned to open space to both improve resilience and relieve the current owners from great financial strain. This project's total cost is $2,078,356 and has been made possible only through federal assistance.

49. Beginning in June 2025, the federal government has failed to obligate over $35,807,486 to Illinois for funds under the State's open FMA awards.

50. FEMA has implemented enhanced review requirements for projects with budgets exceeding $100,000, which significantly extended processing times for reimbursement requests. Additionally, the federal government shutdowns in late 2025 and early 2026 contributed to further delays in communication and funding timelines. Sub-applicants are experiencing protracted delays in receiving approval and crucial funding for FMA projects.

51. The delay in the obligation of funding for ongoing FMA projects has caused serious harm to the State. Because grantees and sub-grantees may not work on a project until FEMA obligates funding for that project, many jurisdictions have been forced to delay mitigation

activities, in some cases for multiple years. These delays hinder progress toward a more resilient Illinois and in particular leave Illinoisians at risk of flooding and further damage caused by flooding.

Executed this 5th day of March 2026, in Springfield, Illinois.

Clayton E. Kuetemeyer
Deputy Director
Illinois Emergency Management Agency and Office of
    Homeland Security

11