**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

STATE OF ILLINOIS *et al.*,

      Plaintiffs,

      v.

RUSSELL VOUGHT, *in his official capacity as Director of the Office of Management & Budget*, *et al.*,

      Defendants.

Case No. 26-cv-1566

Hon. Manish S. Shah

**PLAINTIFF STATES' REPLY IN SUPPORT OF
MOTION TO ENFORCE DISCOVERY ORDER**

**TABLE OF CONTENTS**

I.   Introduction.................................................................................................................... 1

II.  Argument ....................................................................................................................... 2

   A.  Defendants Have Failed to Meet Their Burden to Support Deliberative Process
       Privilege ................................................................................................................... 3

      1.  Defendants Fail to Show That the Documents Are Predecisional................................ 3

         a.  Defendants Improperly Invoke the Deliberative Process Privilege for
            Documents Implementing Prior Decisions................................................................ 3

         b.  Defendants Improperly Invoke the Deliberative Process Privilege for
            Documents That Do Not Relate to a Final Decision................................................. 6

      2.  Defendants Fail to Show That the Documents Are Deliberative................................. 7

   B.  Deliberative Process Privilege Does Not Apply When the Government's Motive Is
       At Issue—Especially When There Is Evidence of Misconduct......................................... 9

   C.  Plaintiff States Have a Particularized Need for This Information ................................... 11

   D.  Defendants' Production Is Incomplete.............................................................................. 14

   E.  In the Alternative, The Court Should Conduct *In Camera* Review ................................. 15

III. Conclusion ..................................................................................................................... 15

ii

## I. INTRODUCTION

Defendants raise no colorable argument to support their mass invocation of deliberative process privilege; the Court should therefore order them to re-produce their production and respond to the discovery order in writing. In filing after filing, defendants have attempted to cast doubt on the existence of an OMB directive to withhold funds from Plaintiff States based on "sanctuary" status or partisan animus, without ever denying that OMB issued such a directive. In filing after filing, defendants have then asserted that the absence of such a directive would strip this Court of jurisdiction, and require transfer to the Court of Federal Claims. The Court found, in issuing preliminary relief, that the record thus far shows that OMB likely *did* issue such a directive, but defendants' motion to transfer now calls for a more definite ruling on that factual question. Such a critical factual finding requires an adequate record; thus, this Court ordered defendants to produce documents embodying and *explaining* the decision to target Plaintiff States, along with documents showing how that decision was implemented. Defendants have taken the position, however, that they need not follow that order because the deliberative process privilege allows them to hide any such evidence under black boxes—or simply withhold key documents entirely. This impedes Plaintiff States' ability to respond to the motion to transfer and forces the Court to decide that motion based on circumstantial evidence when direct evidence is likely at hand.

Of course, the question of Plaintiff States' need for the documents arises only if defendants have met their burden to show that the documents are both predecisional and deliberative. They have not. Among their meritless arguments, Defendants claim that many communications are predecisional even though they occurred *after* the OMB directive. They assert that some documents are predecisional merely as to minutia such as the timing and location of implementation meetings, rather than final agency decisions, as the test requires. And in still others, they claim that clearly factual materials constitute sensitive policy deliberation. Plaintiff

1

States enumerate these failures, document-by-document, in the appendix attached as Exhibit 1-A. But even if these documents were predecisional and deliberative, the privilege does not apply when a plaintiff's claims necessarily call for evidence of an agency's motives—and especially where there are well-founded allegations of government misconduct, as there are here.

Relief is warranted because defendants have failed at every step of the analysis: they have not shown that the privilege applies; Plaintiff States' claims are of the kind that overcomes the privilege regardless; and Plaintiff States' need for the documents is great, both to respond to the motion to transfer and to support a future preliminary injunction motion seeking relief against non-HHS agencies. The Court should thus order defendants to re-produce their production without redactions or withholding based on deliberative process privilege and to respond to the discovery order's document demands in writing, or, in the alternative, order defendants to produce a subset of documents to the Court for *in camera* review.

## II. ARGUMENT

The deliberative process privilege "should be applied 'as narrowly as consistent with efficient government operation.'" *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980)). Its sole purpose is to promote "frank discussion of legal and policy matters." *Farley*, 11 F.3d at 1389. To qualify for the privilege, documents must be both predecisional and deliberative. *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 268 (2021). The government bears the burden of establishing these elements. *See King v. IRS*, 684 F.2d 517, 519 (7th Cir. 1982). Moreover, the privilege does not apply where the agency's motive is central to a plaintiff's claims. *See In re Subpoena Duces Tecum Served on OCC*, 156 F.3d 1279, 1280 (D.C. Cir. 1998). Because defendants fail to carry their burden, and because defendants' intent to unlawfully target Plaintiff States is central to this case, deliberative process privilege does not apply. And even if defendants

2

had carried their initial burden, Plaintiff States have demonstrated a particularized need that overcomes defendants' blanket invocation of the privilege. *See Farley*, 11 F.3d at 1389. At a minimum, the Court should conduct *in camera* review of certain key documents that likely contain evidence crucial to this case.

**A.      Defendants Have Failed to Meet Their Burden to Support Deliberative Process Privilege**

**1.      Defendants Fail to Show That the Documents Are Predecisional**

**a.      Defendants Improperly Invoke the Deliberative Process Privilege for Documents Implementing Prior Decisions**

"Documents are 'predecisional' if they were generated before the agency's final decision on the matter. . . ." *Fish & Wildlife*, 592 U.S. at 268. Thus, any documents generated *after* an agency's "final decision on the matter" at hand are categorically unqualified for the deliberative process privilege. Defendants' improper redactions make it difficult to say with certainty when OMB first decided to direct other agencies to target Plaintiff States for funding cuts based on "sanctuary" status and partisan animus—but the Court has already found that it likely dates to January 13. *See* ECF 63 at 3 ("The reasonable inference . . . is that OMB's post-January 13 efforts to obtain data on federal funds and obtain recommended actions was to implement an OMB-led decision to not make payments to states with sanctuary jurisdictions."). Thus, without prejudice to further motion practice regarding earlier-dated documents, Plaintiff States submit that, at the very least, the subset of documents dated after January 13 (and demarcated in the attached appendix) are necessarily post-decisional—and therefore unprivileged.

Furthermore, the unredacted portions of these documents confirm that they are post-decisional, as many reveal on their faces that they served to carry out an existing decision. For example, the February 4 email chain at CDC_001332 begins with an email to HHS from the OMB Communications Director stating that OMB that day is "going to announce the first cuts we are

3

making in funds that we have been asking agencies to investigation [sic] from 14 states and DC," that "CDC is part of these cuts," and that "examples of cancelled funds include" a lengthy redacted list. The email chain plainly concerns already-decided cuts—not, as defendants assert, "*deliberations* regarding a press strategy for a potential *future* agency decision," ECF 72 at 11 (quoting Decl. of Jordan Faircloth ("CDC Decl.") at 9) (emphasis in ECF 72).[1] Other emails similarly reference decisions that have already occurred or directives that have been given, including one where the OMB Chief of Staff promises to be available "for *further* instruction" related to the subject of the email: "Grant Award - Implementation Call follow up." CDC_001335– 37 (emphasis supplied)).[2] And in some cases, where the nature of the document may be unclear from the unredacted portions alone, the affidavits and logs confirm that defendants are seeking to invoke this privilege over documents concerning the implementation of an existing decision to cut Plaintiff States' funds. For example, one declaration describes the redacted material in CDC_001418–19, a February 5 email thread involving White House, OMB, and HHS personnel, as "reveal[ing] deliberations of the possible *sequencing* of HHS actions related to grants." Decl. of Daniel Shapiro ("OMB Decl.") ¶ 33 (emphasis supplied)).[3] Such documents are not predecisional—and thus, not privileged.

Defendants have no convincing arguments in response. On the contrary, they rely primarily on their theory that the only relevant decision in this case is CDC's February 11 issuance of

---

[1] The Court may find the majority of defendants' productions on the record at ECF 55-3. An additional two documents produced on March 23, 2026, are attached as Exhibits 2 and 3 to this motion. Page numbers for all filings, including the privilege logs, are taken from the CM/ECF header placed at the top of filings.

[2] S*ee also, e.g.*, CDC_001346 (February 11 email redacting list of sub-agencies from which "HHS *will be sending*" grant cancellations (emphasis supplied)).

[3] *See, also e.g.*, OMB Decl. ¶ 24 (describing redacted material in CDC_001278–83, a January 27 email from OMB to HHS entirely redacted after the words "NIH should," as "contain[ing] OMB's answer to HHS's question on how to understand its obligations under the BDR"); *id.* ¶ 25 (describing redacted material in CDC_001287–93, a lengthy late-January email chain between HHS and OMB about the Budget Data Request, as "a characterization of HHS's internal processes for responding to the [Budget Data Request]").

4

termination notices to grant recipients. *See, e.g.*, ECF 72 at 11 (objecting to production of "documents [that] were created *before* the challenged grant terminations were finalized on February 11, 2026" (emphasis in original)). In other words, defendants refuse to acknowledge the upstream OMB directive that Plaintiff States actually challenge, ECF 51, and that the Court has enjoined, ECF at 60. That refusal is incompatible with the order Plaintiff States move to enforce, which directs defendants to produce, *inter alia*, "guidance, directives, or instructions issued after December 1, 2025, from OMB to HHS or CDC on selecting states for grant review." ECF 50 at 1. The Court recognized these conflicting "definitional position[s]" at the status hearing, ECF 76, Tr. 12:2–13:2, but defendants still do not, as their brief and affidavits demonstrate. Instead, they seek yet again to persuade the Court to adopt their framing of the case and ignore the operative pleading. *Contra id.* at 3:19–20 (Court explaining that "[t]he operative complaint sets the stage for what the claims in the case are").

In one example of this definitional dispute, defendants withhold or redact many documents on the basis that they pertain to HHS "grant awards not at issue in this litigation," or to "potential future grant actions" not yet taken. *See* OMB Decl. *passim*; CDC Decl. *passim*. But this case is not limited to specific tranches of CDC grants or to already-attempted terminations, as defendants suggest. Furthermore, the underlying documents do not bear out this objection. For example, after producing (and heavily redacting) two related email chains at CDC_1416–17 and CDC_1418–20, and their five attachments at CDC_1407–15,[4] defendants now claim that this entire group of documents—exchanged on February 5 and 6 between HHS, OMB, and the White House, concerning CDC grant actions based on a review that began January 13—are privileged because they relate to some "future agency grant award action not at issue in this litigation" or otherwise

---

[4] The two email chains (CDC_1416–17 and CDC_1418–20) have the same initiating email from HHS's James (JC) Miller that includes the withheld 5 attachments (CDC_1407–15).

concern "awards not at issue in this litigation." CDC Decl. at 12–13.[5] But if that were true, then there is no reason defendants would have produced them in the first place; the only fair inference to be drawn is that these documents contain material evidence related to the OMB directive.

Defendants also argue that, even if an OMB directive were at issue, documents revealing the post hoc implementation of that directive can qualify for the deliberative process privilege. *See* ECF 72 at 12–13. As support, defendants cite cherry-picked language from the Seventh Circuit's decision in *Farley*—but *Farley* cuts *against* defendant's attempt to shield implementation documents, since it explains that, unlike the documents there, which were "clearly part of the deliberative process leading to the decision to sue," "[c]ommunications made subsequent to an agency decision are . . . not similarly protected [by the privilege]." 11 F.3d at 1389. Communications "discussing" or "explaining" an "existing policy" are post-decisional by definition. *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 875–76 (D.C. Cir. 2010). To accept defendants' argument would be to read the "predecisional" prong out of the test altogether.

### b. Defendants Improperly Invoke the Deliberative Process Privilege for Documents That Do Not Relate to a Final Decision

To show that the contents of a document are "predecisional," defendants must establish that the discussion preceded a "final decision on the matter"—which the Supreme Court has construed to be congruent with the concept of "final agency action" under the APA. *See Fish & Wildlife*, 592 U.S. at 268–69 (citing case "discussing finality in [APA] context" in analyzing when documents are predecisional for deliberative process privilege). Yet defendants' affidavits often fail to meet this basic requirement. In many instances, defendants assert that documents are

---

[5] The CDC_001418–20 email thread also appears in the OMB affidavit, which says nothing about these communications not relating to grants at issue in the litigation, but rather asserts the thread is privileged because it would "reveal deliberations over the possible sequencing of HHS actions related to grants." OMB Decl. ¶ 33.

predecisional to routine agency operations,[6] ongoing processes,[7] or vague general concepts,[8] rather than any *actual decision*—much less a final decision with legal consequences, as the law requires.

Indeed, defendants often assert that documents are predecisional to "decisions" so trivial or preliminary that they cannot possibly qualify as a "final decision on the matter," *id.*, such as decisions about the "timing and location" or "actual content" of a meeting. OMB Decl. ¶¶ 9, 31. For example, defendants heavily redact an email sent on January 22 by an OMB Deputy Director to nearly the entire federal government, *see* OMB Decl. at 14, including all defendant agencies, solely on the basis that it is "predecisional to formulating the actual content of [a] meeting," *id.* ¶ 9 (discussing OMB_000023). Similarly, defendants heavily redact a January 22 email from the same OMB Deputy Director to "a variety of external agency colleagues" (all redacted), OMB Decl. ¶ 31, with the subject line "Presidential Policy Alignment / Execution," seeking "recommended actions prior to February 1," on the basis that the redacted material identifies "OMB personnel involved in [a] phone call" and "contains deliberation as to the timing and location of a subsequent meeting." OMB Decl. ¶ 31 (discussing CDC_001390). Redacting *any* documents—much less such crucial internal communications—by asserting that they are predecisional to non-decisions such as scheduling a meeting cannot justify defendants' redactions.

### 2. Defendants Fail to Show That the Documents Are Deliberative

To qualify for the privilege, documents must also be "deliberative," meaning that "they were prepared to help the agency formulate its position." *Fish & Wildlife*, 592 U.S. at 268.

---

[6] *See, e.g.*, OMB Decl. ¶ 12 (OMB_000030 is purportedly predecisional to "the level of review given to this matter").
[7] *See, e.g.*, OMB Decl. ¶ 8 (OMB_000021 is purportedly predecisional to "OMB developing further efforts to assist HHS in its grant awards process"; document is an email from the OMB Chief of Staff to high-ranking HHS officials titled "Grant Awards" thanking HHS for "support[ing] the President's priorities"); CDC Decl. ¶ 10 (CDC_001350 is purportedly predecisional regarding the "ongoing process for and review of proposed grant actions"; document is an email chain with subject line "Grant Terminations," including a February 8 email noting that HHS is "hoping to send these early tomorrow before business hours," likely referring to the February 9 notices to Congress).
[8] *See, e.g.*, OMB Decl. ¶ 11 (OMB_000026–29 is purportedly predecisional to "the means by which HHS will eventually make funding decisions" and "how OMB can assist those efforts moving forward").

"[D]eliberative communications . . . reflect the give-and-take of the consultative process." *Nat'l Immigrant Just. Ctr. v. DOJ.*, 953 F.3d 503, 508 (7th Cir. 2020) (quotation omitted). Defendants' opposition brief does not contain substantive discussion of the "deliberative" prong, referencing it only in passing in the legal standard. *See* ECF 72 at 8. And defendants' affidavits do not fill this gap in their prima facie case: the CDC affidavit instead largely repeats pro forma assertions that disclosure of the documents "would hamper the agency's ability to manage deliberations in a functional and ordered manner," *see* CDC Decl. ¶¶ 7, 9–10, 12–14 & pp. 7–14, without explaining *why*, while the OMB affidavit often refers to "deliberations" that have nothing to do with give-and-take over agency policy.[9]

Defendants' invocation of privilege over a spreadsheet listing grants awarded in Plaintiff States exemplifies their overbroad application of the deliberative prong. "[T]he deliberative process privilege typically does not justify the withholding of purely factual material." *Enviro Tech Int'l, Inc. v. U.S. E.P.A.*, 371 F.3d 370, 374 (7th Cir. 2004); *see also Wolfe v. Dep't of Health & Hum. Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) ("[F]actual material must be disclosed but advice and recommendations may be withheld."). A CDC staffer created a spreadsheet on January 22 containing "the active awards for Colorado, California, Minnesota, and Illinois," *see* CDC_001266–68, 001436, which was sent to the OMB Chief of Staff on January 28, *see* CDC_001323; CDC Decl. at 8–9, and then sent back on February 4, *see* OMB_000030; OMB Decl. ¶¶ 13, 36. A list of grants awarded in Plaintiff States, passed back and forth between OMB and CDC, is both factual in nature and highly relevant to OMB's role in directing CDC grant cuts to Plaintiff States. Defendants' claim of privilege over every single version of it[10] therefore fails,

---

[9] *See, e.g.*, OMB Decl. ¶ 8 ("OMB's belief as to an aspect of HHS's internal processes"); *id.* ¶ 10 ("potential timelines and form of subsequent OMB outreach"); *id.* ¶ 24 ("description of which particular HHS operating divisions' submissions were attached to the email"); *id.* ¶¶ 24–26 ("timing of submissions from HHS to OMB").
[10] *See* CDC_001268.1, 001324, 001399, 001437, 001439; OMB Decl. ¶ 13 & p. 15.

8

and the spreadsheets "must be disclosed." *See Wolfe*, 839 F.2d at 774.

**B.      Deliberative Process Privilege Does Not Apply When the Government's Motive Is At Issue—Especially When There Is Evidence of Misconduct**

Even if any of these documents were predecisional and deliberative, deliberative process privilege still would not apply because it is categorically inapplicable to documents probative of agency motives when a case implicates those motives. *See In re Subpoena Duces Tecum Served on OCC*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("[I]f either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequitur."); *see also, e.g.*, *Connelly v. Cook Cnty. Assessor's Off.*, 2022 WL 17718411, at *6–7 (N.D. Ill. Dec. 15, 2022) (collecting cases) ("[T]he privilege does not apply where a plaintiff's claims challenge the motive and intent behind the government's action."). Plaintiff States' claims turn on OMB's motive for directing other agencies to cut funding to Plaintiff States. *E.g.*, ECF 51 ¶¶ 185, 194, 203, 212, 221. Yet defendants have withheld and redacted communications from OMB to other federal agencies that would reveal OMB's role and motive in singling out Plaintiff States. For instance, defendants say that a January 17 email from the OMB Chief of Staff to high-ranking HHS officials titled "Grant Awards," *see* OMB_000021, is privileged because it would reveal "context for why OMB is making this request." OMB Decl. ¶ 8. Likewise, CDC claims privilege over "inter-agency communications regarding the ongoing process for and review of proposed grant actions," CDC Decl. ¶ 10, even though those claims are central to the case.

Application of the deliberative process privilege is particularly unwarranted where, as here, there is evidence of government misconduct. Indeed, the Seventh Circuit has assumed "that internal discussions about a course of agency action that would be nefarious, if not illegal, likewise would not be protected by the deliberative process privilege." *Enviro Tech*, 371 F.3d at 376. This rule defeats deliberative process privilege at the threshold, *In re Sealed Case*, 121 F.3d 729, 746

9

(D.C. Cir. 1997) ("the privilege disappears altogether when there is any reason to believe government misconduct occurred"), and circumstantial evidence suffices, *United States v. Lake Cnty. Bd. of Comm'rs*, 233 F.R.D. 523, 527 (N.D. Ind. 2005). The Court has already held that Plaintiff States can clear that bar, finding sufficient likelihood "that the Office of Management and Budget directed HHS to cut funding for plaintiffs by February 1 because plaintiffs were on a list of states with sanctuary jurisdictions." ECF 63 at 4. Plaintiff States have also shown that the same OMB directive went to other federal agencies, ECF 56 at 19–20, which defendants' privilege log now confirms, OMB Decl. at 14–15. So "it makes no sense to permit the government to use the privilege as a shield" in this instance. *In re Subpoena Duces Tecum*, 145 F.3d at 1424.

In response, defendants cite just one district court ruling that opted for *in camera* review instead of suspending the privilege entirely. *See* ECF 72 at 13 (citing *Ill. Coal. for Immigrant & Refugee Rts., Inc. v. Wolf*, 2020 WL 7353408, at *2 (N.D. Ill. Dec. 15, 2020) [hereinafter, *ICIRR*]). As a procedural matter, Plaintiff States do not object to an *in camera* review, so this case does not cut against Plaintiff States' position. *See infra* p. 15. But *ICIRR*'s rejection of an intent exception is also substantively unpersuasive. *ICIRR* relied on a passing comment from a Seventh Circuit opinion that privileges "must be addressed and resolved one lawsuit—indeed, one document—at a time." *ICIRR*, 2020 WL 7353408, at * 2 (quoting *United States v. Zingsheim*, 384 F.3d 867, 872 (7th Cir. 2004)). Though *ICIRR* called this a holding, *id.*, *Zingsheim* was a criminal sentencing appeal that implicated the privilege only obliquely, 384 F.3d at 871. And *ICIRR* did not note the Seventh Circuit's endorsement of an exception for "nefarious" conduct in *Enviro Tech*, 371 F.3d at 376. Thus, this Court should join the majority view that "because Defendants' intent and misconduct are directly at issue, the deliberative process privilege does not apply." *Glenwood Halsted LLC v. Vill. of Glenwood*, 2013 WL 140794, at *3 (N.D. Ill. Jan. 11, 2013).

10

**C.**     **Plaintiff States Have a Particularized Need for This Information**

Even if the Court found that defendants met their burden to prove that the deliberative process privilege applies to some or all of their production, Plaintiff States may overcome the privilege "where there is a sufficient showing of a particularized need to outweigh the reasons for confidentiality." *Farley*, 11 F.3d at 1389. The question of need arises only "if the government meets its threshold burden of showing that the privilege applies." *Evans v. City of Chi.*, 231 F.R.D. 302, 316 (N.D. Ill. 2005) (quoting *Ferrell v. HUD*, 177 F.R.D. 425, 428 (N.D. Ill. 1998)). In evaluating a litigant's need, courts consider factors such as:

> (1) the relevance of the documents to the litigation; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the government's role in the litigation; (4) the seriousness of the litigation and the issues involved in it; and (5) the degree to which disclosure of the documents sought would tend to chill future deliberations within government agencies, that is would hinder frank and independent discussion about governmental policies and decisions.

*Ferrell*, 177 F.R.D. at 429.

With regard to both Plaintiff States' forthcoming opposition to defendants' motion to transfer and Plaintiff States' likely forthcoming motion for preliminary injunction as to non-HHS agencies, all of these factors favor Plaintiff States. To start, the documents are unquestionably relevant, and only defendants have access to documents memorializing the internal decision-making that is the heart of this case. *See id.* at 430 ("highly relevant nature of the documents . . . and the fact that Plaintiffs cannot retrieve [the agency's] decisionmaking process through other means" outweighed privilege claim). As the Court has acknowledged, Plaintiff States have thus far made their case for the existence of the challenged OMB directive "through circumstantial" evidence. ECF 63 at 2–4. Defendants have *forced* Plaintiff States to rely on circumstantial evidence by shielding direct evidence behind privilege claims, while at the same time arguing that Plaintiff States' circumstantial case is insufficient without the very evidence defendants have withheld.

11

*E.g.*, ECF 58 at 25–26. To counter that argument, Plaintiff States thus have a particularized need for direct evidence of what OMB told HHS and other federal agencies about Plaintiff States' federal funding, and why, and when. Defendants admit that redacted and withheld documents contain such evidence, testifying that the purportedly privileged material includes, for example, "the purpose OMB had in requesting [HHS] briefings," OMB Decl. ¶ 6, an OMB request to HHS for grant information "and context for why OMB is making this request," *id.* ¶ 8, the "content to be discussed at [a] meeting" between OMB and the heads of nearly every federal agency, *id.* ¶ 9, and "OMB's answer to HHS's question on how to understand its obligations," *id.* ¶ 24.

Specifically as to the motion to transfer, defendants' argument is that this is merely a grant-termination case that boils down to contract claims against the United States, for which jurisdiction only lies in the Court of Federal Claims. To make this argument, they have repeatedly sought to cast doubt on the existence of an OMB directive—as they must, given that "challenges to [such] agency-wide policies . . . belong in district court." *Massachusetts v. NIH*, 164 F.4th 1, 11 (1st Cir. 2026). But defendants cannot use deliberative process privilege as a sword to deprive Plaintiff States of direct evidence of defendants' unlawful directive. *See Evans*, 231 F.R.D. at 317 (finding particularized need where "the best evidence . . . is not available from other sources"). Defendants are withholding evidence that would aid Plaintiff States and the Court in determining the existence of the agency policy that Plaintiff States challenge. Plaintiff States thus have a particularized need, already recognized by the Court, which overcomes defendants' invocation of the privilege.

And, as to potential future injunctive relief, when Plaintiff States moved for a preliminary injunction, they sought relief not only against implementation of an OMB directive at HHS, but also against similar targeted cuts and freezes at DHS and DOT. The Court noted, however, that "the official record in this case is limited to HHS (because of the scope of the lawsuit before

12

plaintiffs filed an amended complaint)" and found that "record does not *yet* support" relief against non-HHS agencies. ECF 63 at 4 (emphasis supplied). There is a strong likelihood that information defendants have withheld would fill gaps in the record regarding other agencies. For example, the heavily redacted January 22 email from OMB to numerous federal agencies "related to spending by those agencies" went to both DOT and DHS, OMB ¶ 9 & p. 14; *see* OMB_000023. Plaintiff States have a particularized need to know exactly what OMB told those agencies "related to spending." This need is acute. Plaintiff States are suffering ongoing irreparable harm due to the DOT funding cuts and FEMA funding freeze, which federal sources have publicly stated are the result of the direct targeting of Plaintiff States—including harms to public safety due to unsafe traffic conditions and disaster-damaged infrastructure that the funding at issue was meant to remedy. *See* ECF 56 at 28-29. Set against the severity of that need, defendants' interest in preserving the confidentiality of these documents cannot prevail.

As to the remaining factors, the federal agencies who possess the relevant materials are defendants in the case, not mere bystanders. This litigation is of the highest importance: human life and safety are at stake, and core constitutional principles are at issue. And defendants' assertions that disclosure would chill future deliberations are boilerplate, failing to explain *how* future deliberations would be affected. Pro forma recitals of the legal standard cannot outweigh Plaintiff States' urgent need for these highly relevant documents.

Defendants assert, however, that Plaintiff States had the burden to make a showing of particularized need in their initial motion, and failed to do so. ECF 72 at 9–10. This is not true, as both a legal and factual matter. First, the necessity question only arises if defendants establish their prima facie case, which had not (and still has not) occurred here. In fact, when Plaintiff States filed their initial motion, defendants had not even completed the initial basic step of submitting

13

affidavits outlining the justifications for the privilege, rendering any argument about necessity premature. *See* ECF 55 at 8. Those affidavits are now on file. Furthermore, the changed circumstances since the filing of the motion make Plaintiff States' need all the more acute. In particular, there is now a pending motion to transfer which, as explained, requires the court to make more definitive findings as to the existence and scope of the OMB directive to ensure its own jurisdiction. Thus, defendants' own litigating position has sharpened Plaintiff States' need for these documents—a need to which defendants raise no substantive rebuttal. *See* ECF 72 at 9-10.

**D.    Defendants' Production Is Incomplete**

Finally, Defendants have not certified that they have completed the production ordered by the Court, as the order requires—and it appears that key documents are still missing. *See* ECF 50 at 2–3. First, one category ordered by the Court was "documents explaining how plaintiffs were selected for inclusion in Attachment B to Budget Data Request 26-09." ECF 50 at 1. The afternoon of the date this brief was due, without leave of court, defendants filed additional declarations purporting to certify that there are no such documents. ECF 77. It seems unlikely, to say the least, that OMB generated no documents speaking to how or why four of the 50 equally sovereign States were selected for a searching budgetary review—but even if true, this remarkable and belated assertion does not discharge defendants' obligation to respond in full to the remaining court-ordered requests. And even in the new declarations, defendants still fail to respond to the Court's request to identify which documents are responsive to which categories. *See* ECF 76, Tr. 11:12–24 ("[W]ere there documents that were actually responsive to any of these categories? . . . I am asking . . . so that I can understand what universe of information is actually out there."). The civil rules similarly require that parties respond in writing to each discovery request. *See* Fed. R. Civ. P. 26(g), 34(b)(2).

Second, OMB now admits that it withheld, based on relevance, grant review documents

14

that it sent to non-CDC components of HHS, OMB Decl. ¶¶ 21–22, but the Court's order on this point included "HHS or CDC," not CDC alone. ECF 50 at 1 ¶ 3. Third, the Court directed defendants to produce the presidential "order" under which "anybody that does a sanctuary city is not getting any money," ECF 28-1 Ex. A ¶ 2; ECF 50 at 1; but defendants have not identified that order in the production. Plaintiff States request that defendants be required to complete their production and respond in writing to the requests, specifying which documents are responsive to which categories of production ordered by the Court.

**E.        In the Alternative, The Court Should Conduct *In Camera* Review**

Plaintiff States have shown that *all* of defendants' invocations of the deliberative process privilege fail, and thus immediate re-production is required. If, however, the Court disagrees as to some or all of defendants' production, Plaintiff States respectfully request that the Court review a subset of the documents *in camera*. Column N of the attached appendix indicates the documents which Plaintiff States would respectfully propose as the *in camera* review set. This set of documents includes those discussed in this brief, as well as a subset of additional documents that appear to be particularly probative of the existence of the OMB directive and defendants' motive in targeting Plaintiff States. They were selected based on factors such as the substance of the unredacted text, the timing, the author, and the identities of any recipients.

### III. CONCLUSION

Plaintiff States respectfully request that the Court order Defendants to re-produce their discovery production without redactions or withholding based on deliberative process privilege, complete their production, and respond in writing to the document requests, identifying which documents are responsive to which categories of production ordered by the Court. In the alternative, Plaintiff States respectfully request that the Court undertake *in camera* review of defendants' production, or of the subset of documents identified in Column N of the appendix.

Dated: March 31, 2026

**ROB BONTA**
*Attorney General of California*

By: */s/ Harald H. Kirn*
R. MATTHEW WISE*
KATHLEEN BOERGERS
*Supervising Deputy Attorneys General*
HARALD H. KIRN
CHRISTOPHER KISSEL*
CARTER JANSEN*
DAVID GREEN*
*Deputy Attorneys General*
California Office of the Attorney General
1300 I Street
Sacramento, CA 95814
916-210-6111
Harald.Kirn@doj.ca.gov
Christopher.Kissel@doj.ca.gov
Carter.Jansen@doj.ca.gov
David.Green@doj.ca.gov

*Counsel for the State of California*

**KWAME RAOUL**
*Attorney General of Illinois*

By: */s/ Katharine Roller*
CARA HENDRICKSON
*Executive Deputy Attorney General*
KATHARINE ROLLER
*Complex Litigation Counsel*
SARAH HUNGER
*Deputy Solicitor General*
MATTHEW FREILICH
SHERIEF GABER
MOLLY MAUCK
AKANKSHA SHAH
R. HENRY WEAVER
BRIANNA YANG
*Assistant Attorneys General*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000
Cara.Hendrickson@ilag.gov
Katharine.Roller@ilag.gov
Sarah.Hunger@ilag.gov
Sherief.Gaber@ilag.gov
Molly.Mauck@ilag.gov
Robert.Weaver@ilag.gov

*Counsel for the State of Illinois*

16

**PHILIP J. WEISER**
*Attorney General of Colorado*

By: */s/ David Moskowitz*
DAVID MOSKOWITZ
*Deputy Solicitor General*
SARAH H. WEISS
*Senior Assistant Attorney General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov
Sarah.Weiss@coag.gov

*Counsel for the State of Colorado*

**\*** Pro Hac Vice Forthcoming

**KEITH ELLISON**
*Attorney General of Minnesota*

By: */s/ Katherine Bies*
KATHERINE BIES
ED STOCKMEYER
*Assistant Attorneys General*
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 300-0917
Katherine.Bies@ag.state.mn.us
Ed.Stockmeyer@ag.state.mn.us

*Counsel for the State of Minnesota*