**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS *et al.*, | |
| Plaintiffs, | Case No. 26-cv-1566 |
| v. | Hon. Manish S. Shah |
| RUSSELL VOUGHT, *in his official capacity as Director of the Office of Management & Budget*, *et al.*, | |
| Defendants. | |

**PLAINTIFF STATES' OPPOSITION TO**
**DEFENDANTS' RENEWED MOTION TO TRANSFER**

**TABLE OF CONTENTS**

I.   Introduction ........................................................................................................... 1

II.  Background ............................................................................................................ 3

III. Legal Standard ...................................................................................................... 5

IV. Argument ............................................................................................................... 6

    A.  The Court has jurisdiction over this entire action. ........................................... 7

        1.  The § 702 waiver of sovereign immunity applies to this action. ................ 7

            a.  Plaintiff States do not seek money damages. ...................................... 7

            b.  The Tucker Act does not "impliedly forbid" relief pursuant to § 702(2). .............. 8

                i.  Plaintiff States' claims are based on statutory and constitutional rights. ......... 10

                ii. Plaintiff States do not seek contractual remedies. ........................................ 14

        2.  This Court has jurisdiction over Plaintiff States' constitutional counts in equity, with or without reliance on § 702. ........................ 16

        3.  The § 704 elements are not jurisdictional and, in any event, Plaintiff States have no adequate remedy in the Court of Federal Claims. ........................ 18

    B.  The Court of Federal Claims would lack jurisdiction over this action. .......... 20

        1.  The Court of Federal Claims would lack jurisdiction. .............................. 21

        2.  Partial transfer would be legally impossible. ........................................... 24

    C.  The interest of justice factor is not relevant. .................................................. 26

    D.  If this Court intended to dismiss or transfer in part, Plaintiff States would request supplemental briefing as to the effect on the existing injunction. ................ 27

V.  Conclusion ........................................................................................................... 27

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62
(D.C. Cir. 2004) ...................................................................................................8–9

*Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440 (7th Cir. 2009)....................................5

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) ..................................................16

*Ass'n for Educ. Fin. & Policy, Inc. v. McMahon*, 2026 WL 523023
(D.D.C. Feb. 25, 2026) ..............................................................................................20

*Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398 (2d Cir. 2015) ..............................................9–10

*Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376 (Fed. Cir. 2015)....................................19–20

*Bell v. Hood*, 327 U.S. 678 (1946)..................................................................................12, 16–17

*Boaz Hous. Auth. v. United States*, 994 F.3d 1359 (Fed. Cir. 2021) ............................................23

*Boim v. Am. Muslims for Palestine*, 9 F.4th 545 (7th Cir. 2021)..................................2, 6, 11–12

*Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134 (9th Cir. 2024) ............................................12

*Bowen v. Massachusetts*, 487 U.S. 879 (1988).......................................................................8, 20–21

*Brandt v. United States*, 710 F.3d 1369 (Fed. Cir. 2013) .............................................................24

*Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272 (7th Cir. 2017) .....................................19

*Bush v. United States*, 100 F.4th 807 (7th Cir. 2024) ...................................................................15

*Chen v. Gonzales*, 435 F.3d 788 (7th Cir. 2006) .........................................................................22

*Chi. Typographical Union v. Chi. Sun-Times, Inc.*, 935 F.2d 1501 (7th Cir. 1991).....................15

*Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1988)..................................20–21, 26

*Christopher Vill., L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004)................................19–20

*City of Chicago v. U.S. Dep't of Homeland Sec.*, 815 F. Supp. 3d 727 (N.D. Ill. 2025).........15, 17

*Colorado v. U.S. Dep't of Health & Hum. Servs.*, 788 F. Supp. 3d 277 (D.R.I. 2025).................10

*Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893 (7th Cir. 2013)........8, 25

*Consol. Edison Co. of N.Y. v. United States*, 247 F.3d 1378 (Fed. Cir. 2001) .............................19

*Cordova-Soto v. Holder*, 732 F.3d 789 (7th Cir. 2013)..................................................................7

*Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, 2026 WL 120984
(D.D.C. Jan. 16, 2026) ...............................................................................................18

*Crocker v. United States*, 125 F.3d 1475 (Fed. Cir. 1997) ...........................................................21

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518 (D.C. Cir. 2025).....................19

*Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369 (Fed. Cir. 2000) ...................................23

*Dalton v. Specter*, 511 U.S. 462 (1996) ..............................................................................17

*Dep't of Educ. v. California*, 604 U.S. 650 (2025) ..................................................8–9, 13

*Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753 (2025)..............................15

*Delano Farms Co. v. Calif. Table Grape Comm'n*, 655 F.3d 1337 (Fed. Cir. 2011)....................20

*Dhakal v. Sessions*, 895 F.3d 532 (7th Cir. 2018) ..............................................................18

*Dugan v. Rank*, 372 U.S. 609 (1963) ..................................................................................16

*Evers v. Astrue*, 536 F.3d 651 (7th Cir. 2008) ....................................................................10

*Glob. Health Council v. Trump*, 153 F.4th 1 (D.C. Cir. 2025).........................................17

*Gonzalez v. Thaler*, 565 U.S. 134 (2012) ...........................................................................19

*Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) .........................14–15

*Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675 (7th Cir. 2006) ............................4

*Healy v. Sea Gull Specialty Co.*, 237 U.S. 479 (1915) .....................................................1–2

*Hempstead Cnty. & Nev. Cnty. Project v. U.S. E.P.A.*, 700 F.2d 459 (8th Cir. 1983) ..................26

*Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997)..............................................23–24

*Illinois v. Vought*, _ F. Supp. 3d _, 2026 WL 404014 (N.D. Ill. Feb. 12, 2026) ................3

*Illinois v. Vought*, 2026 WL 962382 (N.D. Ill. Feb. 25, 2026).............................................3

*Illinois v. Vought*, _ F. Supp. 3d _, 2026 WL 962287 (N.D. Ill. Mar. 12, 2026)................1

*In re United States*, 463 F.3d 1328 (Fed. Cir. 2006) .........................................................23

*Jaye v. United States*, 781 F. App'x 994 (Fed. Cir. 2019)..................................................23

*Kidwell v. Dep't of Army*, 56 F.3d 279 (D.C. Cir. 1995)......................................................8

*Maine v. Nat'l Oceanic & Atmospheric Admin*, 2026 WL 1005094
    (D. Me. Apr. 14, 2026) .................................................................................................24

*Malak v. Associated Physicians, Inc.*, 784 F.2d 277 (7th Cir. 1986)...........................6, 12

*Massachusetts v. Nat'l Institutes of Health*, 164 F.4th 1 (1st Cir. 2026)......................14–15

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209
    (2012).....................................................................................................................9–10

*Me. Cmty. Health Options v. United States*, 590 U.S. 296 (2020) .....................................23

*Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982) .............................................9–11

*Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536 (7th Cir. 2006)...........................6, 12–13

*Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818 (7th Cir. 2016) ..........................8

*Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765 (7th Cir. 2011).............7, 16, 18–19

*Milgroom v. United States*, 651 F. App'x 1001 (Fed. Cir. 2016) ......................................23

*Mittelstadt v. Perdue*, 913 F.3d 626 (7th Cir. 2019)............................................................8

*Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043 (7th Cir. 2025) ...........................................7–8

*Nat'l Institutes of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658 (2025)......1, 8–11, 14, 20, 26

*North v. Ubiquity, Inc.*, 72 F.4th 221 (7th Cir. 2023) ..................................................................26

*Pennhurst State Sch. & Hosp. v Halderman*, 451 U.S. 1 (1981) ..................................................18

*Perry Cap. LLC v. Mnuchin*, 864 F.3d 591 (D.C. Cir. 2017) ............................................9, 15, 19

*Perttu v. Richards*, 605 U.S. 460 (2025)...............................................................................5–6, 12

*Philadelphia Co. v. Stimson*, 223 U.S. 605 (1912).......................................................................16

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568 (Fed. Cir. 1996) ...................19

*Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111 (Fed. Cir. 2003) ...........................................19

*S.F. Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280 (N.D. Cal. 2025)..........................23

*Sapperstein v. Hager*, 188 F.3d 852 (7th Cir. 1999)......................................................................6

*Shapiro v. McManus*, 577 U.S. 39 (2015) ....................................................................................17

*Shelby County v. Holder*, 570 U.S. 529 (2013) ............................................................................18

*Sierra Club v. Trump*, 929 F.3d 670 (9th Cir. 2019) ....................................................................17

*Sols. in Hometown Connections v. Noem*, 165 F.4th 835 (4th Cir. 2026) ...............................13–14

*Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282 (7th Cir. 2020) .........................................5–6

*Squillacote v. United States*, 747 F.2d 432 (7th Cir. 1984) ..........................................................26

*St. Augustine Sch. v. Underly*, 78 F.4th 349 (7th Cir. 2023) ........................................................25

*Stephens v. United States*, 165 Fed. Cl. 341 (Ct. Cl. 2023) ..........................................................23

*Tasby v. United States*, 91 Fed. Cl. 344 (Ct. Cl. 2010)..................................................................23

*Taylor Energy Co. v. Dep't of the Interior*, 990 F.3d 1303 (Fed. Cir. 2021) ..........................21–22

*Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151 (1st Cir. 2007)................................................12

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) ..................................................19

*Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543 (D.C. Cir. 1992)...................................................5

*United States v. Cnty. of Cook*, 167 F.3d 381 (7th Cir. 1999).................................................25–26

*United States v. Cnty. of Cook*, 170 F.3d 1084 (Fed. Cir. 1999) ..................................................25

*United States v. Mitchell*, 463 U.S. 206 (1983) ...........................................................................23

*United States v. Mottaz*, 476 U.S. 834 (1986) .......................................................................1–2, 14

*United States v. Norwood*, 602 F.3d 830 (7th Cir. 2010) .............................................................23

*United States v. Testan*, 424 U.S. 392 (1976)..............................................................................23

*United States v. Tohono O'Odham Nation*, 563 U.S. 307 (2011) ..........................................9, 24–25

*Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12 (D.D.C. 2025) ...............................24

*Wild v. Subscription Plus, Inc.*, 292 F.3d 526 (7th Cir. 2002).....................................................15

v

**Statutes**

Pub. L. 94-574, 90 Stat. 2721 (1976)..........................................................................................16

5 U.S.C.
    § 702.....................................................................................2, 6–10, 15–18, 20
    § 704.....................................................................................................7, 18–20
    § 706..............................................................................................................14

28 U.S.C.
    § 1292...........................................................................................................19
    § 1331.............................................................................................................7
    § 1346.............................................................................................................9
    § 1491........................................................................................................9, 22
    § 1500..............................................................................................2, 21, 24–26
    § 1631.................................................................................2–3, 5–7, 17, 20–22, 26

**Other Authorities**

15 Fed. Prac. & Proc. Juris. § 3842 (4th ed.)...........................................................................21, 26

Admin. Conf. of the United States, Statutory Reform of the Sovereign Immunity
    Doctrine, Recommendation 69-1 (Oct. 21, 1969)..................................................................17

Josh Christenson, *White House Instructs DOT, CDC to Cut $1.5B in Grants for Dem
    States, Citing 'waste and mismanagement,'* N.Y. Post (Feb. 4, 2026),
    https://nypost.com/2026/02/04/us-news/white-house-instructs-dot-cdc-to-cut-1-5b-in-
    woke-green-grants-for-dem-states/ .........................................................................................13

Rachel Frazin, *FEMA releasing billions in disaster assistance, while further funds await
    approval*, The Hill (Feb. 27, 2026), https://thehill.com/policy/energy-
    environment/5759529-billions-in-fema-funds-awarded/ ........................................................13

H.R. Rep. 94-1656 (1976)........................................................................................................16–17

## I. INTRODUCTION

Plaintiff States challenge an Office of Management and Budget ("OMB") directive that directs federal agencies to single them out for funding cuts (the "Targeting Directive"). This Court has jurisdiction to hear the challenge to this directive. *See Nat'l Institutes of Health v. Am. Pub. Health Ass'n* (*APHA*), 145 S. Ct. 2658, 2661 (2025) (Barrett, J., concurring). Indeed, the Court has already held that there is sufficient evidence of an unlawful directive from OMB to the Department of Health and Human Services ("HHS") and its component the Centers for Disease Control and Prevention ("CDC") to establish jurisdiction and to warrant preliminary injunctive relief. *See* ECF 63–64, *Illinois v. Vought*, _ F. Supp. 3d _, 2026 WL 962287 (N.D. Ill. Mar. 12, 2026).

Defendants' current motion attacks a lawsuit that Plaintiff States did not bring. It argues that Plaintiff States would have an adequate remedy via the Tucker Act for hypothetical, unpleaded contract claims in the Court of Federal Claims ("CFC") against specific grant terminations by CDC only. *See* ECF 43-1 at 21–27.[1] A basic problem is that Plaintiff States have already amended their complaint to include the Targeting Directive's implementation at further agencies: the Department of Transportation ("DOT"), the Department of Homeland Security ("DHS"), and its component the Federal Emergency Management Agency ("FEMA"). Even though defendants renewed their motion to transfer long after the amended complaint was filed, the motion says not a word about those newer defendants. The two-page renewed motion merely "incorporate[s] by reference" the original motion, a motion focused exclusively on CDC. ECF 62 at 2.

That specific defect is emblematic of a deeper problem: Defendants refuse to engage with the fundamental nature of this lawsuit—a challenge to the Targeting Directive. "[T]he plaintiff is absolute master of what jurisdiction he will appeal to," and Plaintiff States have "not brought a

---

[1] Citations to "ECF _" reference items on the Court's docket; pincites are to the page numbers in the ECF header or, for documents enumerated by paragraph, to paragraph numbers.

case falling within the scope of the Tucker Act." *United States v. Mottaz*, 476 U.S. 834, 850 (1986) (quoting *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915)). Plaintiff States instead appealed to *this* Court's jurisdiction by filing a complaint arising from the Directive. That is apparent, first, from the face of the complaint. *See* ECF 51 ¶¶ 2, 8. Second, to find a lack of jurisdiction over that complaint, the Court would have to rule against Plaintiff States on *merits* issues—the existence and reviewability of the Directive—but courts should not "decid[e] merits questions when evaluating challenges to jurisdiction." *Boim v. Am. Muslims for Palestine*, 9 F.4th 545, 557 (7th Cir. 2021). Third, in the alternative, if defendants' motion were construed as a factual challenge to jurisdiction, the uncontroverted record evidence amply supports the existence of an OMB directive to target Plaintiff States for funding cuts.

Because Plaintiff States have pleaded—and already begun to prove—meritorious claims against an underlying OMB directive, the renewed motion to transfer should be denied. Specifically, to transfer under 28 U.S.C. § 1631, a court must conclude both that it lacks jurisdiction and that the transferee court would have had jurisdiction at the time of filing. But this Court has jurisdiction to review the Targeting Directive under the waiver of federal sovereign immunity, as the Tucker Act does not "impliedly forbid" relief against the Directive. 5 U.S.C. § 702(2). In addition, this Court has inherent jurisdiction in equity to adjudicate Plaintiff States' constitutional counts. Next, the CFC could not hear this suit, in whole or in part. The CFC cannot review agency action under the Administrative Procedure Act ("APA") or issue equitable relief. If the Court attempted to split this case, sending part of it to the CFC, the CFC would automatically lack jurisdiction due to 28 U.S.C. § 1500, which prohibits the CFC from exercising concurrent jurisdiction with a district court. A partial transfer would thus violate § 1631. This Court has jurisdiction over the entire case, and the renewed motion to transfer should be denied in full.

2

## II. BACKGROUND

This action challenges a directive issued by OMB commanding other federal agencies to target Plaintiff States for funding cuts, which Plaintiff States call the Targeting Directive. ECF 51 ¶¶ 2, 56–64. The original complaint, filed on February 11, 2026, alleged that this Directive was being implemented at HHS and CDC. ECF 1 ¶¶ 2, 47, 57. On February 9, at OMB's command, HHS notified Congress of its intent to cut more than $600 million in CDC grants to the four Plaintiff States. *Id.* ¶¶ 1–2. Defendants then attempted to terminate that set of grants, with the terminations effective on February 12, the day after the complaint was filed, s*ee* ECF 44-9 at 50 to ECF 44-10 at 238 (CDC_000850–001238); but the terminations were prevented by this Court's temporary restraining order ("TRO"), ECF 20–21, *Illinois v. Vought*, _ F. Supp. 3d _, 2026 WL 404014 (N.D. Ill. Feb. 12, 2026). The operative amended complaint, filed on March 3, alleges that the Targeting Directive's implementation so far encompasses not only HHS and CDC but also DOT, DHS, and FEMA. ECF 51 ¶¶ 65–75. DOT, DHS, and FEMA have not attempted to terminate existing grants but instead have withheld new obligations to Plaintiff States. *Id.* ¶¶ 114–146.

During the life of the TRO, defendants moved to transfer this case to the CFC pursuant to 28 U.S.C. § 1631 or, in the alternative, to dismiss all claims for want of jurisdiction under Rule 12(b)(1), or for failure to state a claim under Rule 12(b)(6). ECF 43, 43-1. The original transfer motion was filed when the only named agency defendants were OMB, HHS, and CDC. ECF 51 ¶¶ 12, 14, 16. To accompany the motion, defendants filed an "administrative record," ECF 44, which defendants concede was "just for the grants rather than some OMB decision," ECF 76, Tr. at 16:12–14.

The Court also ordered certain expedited discovery limited to OMB, HHS, and CDC "to allow this court to assess its jurisdiction and to decide whether preliminary injunctive relief is warranted." ECF 50 at 2, *Illinois v. Vought*, 2026 WL 962382 (N.D. Ill. Feb. 25, 2026). Pursuant

3

to that order, defendants have produced approximately 60 documents, many heavily redacted. *See* ECF 55-3, 78-2, 78-3 (complete production); *see also* ECF 78-1 & Ex. A (production index). Plaintiff States' motion to enforce full production of that discovery, ECF 55, is pending.[2]

On March 12, the Court granted in part Plaintiff States' motion for a preliminary injunction. *See* ECF 63. The Court held that Plaintiff States could likely establish a "final decision by OMB with a different motive than what HHS used to explain its grant-termination decision," namely a "directive that guided HHS to terminate plaintiffs' grants." *Id.* at 4. Even with the extensive redactions, the expedited discovery production—and defendants' public statements—gave rise to a "reasonable inference . . . that the Office of Management and Budget directed HHS to cut funding for plaintiffs by February 1 because plaintiffs were on a list of states with sanctuary jurisdictions." *Id.* The Court held that Plaintiff States could not "yet" substantiate that the same directive was "at work against them at DOT and DHS." *Id.* The Court observed that "the official record in this case is limited to HHS (because of the scope of the lawsuit before plaintiffs filed an amended complaint)." *Id.* The Court enjoined defendants, except for the President, "from implementing any guidance or directives to target Illinois, California, Colorado, or Minnesota for the cessation of Health and Human Services or Centers for Disease Control-awarded payments after January 13, 2026." ECF 64 ¶ 1.

---

[2] If the Court concluded, for any reason, that it needed additional evidence to resolve the motion to transfer, Plaintiff States would request that the Court order further discovery as appropriate before resolving it, including by granting Plaintiff States' pending motion to enforce. *See Hart v. FedEx Ground Package Sys. Inc.*, 457 F.3d 675, 682 (7th Cir. 2006) ("[T]he plaintiffs have the right, through appropriate discovery, to explore the facts relevant to the court's jurisdiction as the case progresses."). Plaintiff States have diligently sought jurisdictional discovery, over defendants' consistent objection, given the uncertainty in the legal standard to which Plaintiff States will be held in this early challenge to jurisdiction that also implicates the merits of their legal claims. *See* ECF 45 at 10 (seeking discovery on the ground that "whether defendants implemented 'internal agency guidance'" also implicates jurisdiction); ECF 78 at 14 (similar). As discussed below, the Court need not resolve any fact disputes to deny this pending motion. *See infra* pp. 5–6, 11–13. But, if the Court concluded otherwise, further jurisdictional discovery would be warranted.

4

The amended complaint terminated the original motion to transfer or to dismiss. *See* ECF 53; ECF 76, Tr. at 3:14–4:11. On March 12, defendants renewed their motion to transfer as to the amended complaint, but they did not renew any request for dismissal. ECF 62. Defendants do not present additional argument in support of transfer but merely "incorporate by reference" prior briefs in support of their original motion to transfer and in opposition to preliminary relief. *Id.* at 2.[3] Neither of those briefs made any argument about the Targeting Directive's implementation by the agency defendants joined in the amended complaint: DOT, DHS, and FEMA. Nevertheless, defendants contend that the renewed motion to transfer "applies to the new Defendants." *Id.*

### III. LEGAL STANDARD

Transfer is appropriate under 28 U.S.C. § 1631 if (1) "there is a want of jurisdiction" in the origin court; (2) the action "could have been brought" in the transferee court "at the time it was filed"; and (3) transfer would be "in the interest of justice." 28 U.S.C. § 1631; *see Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543, 549 (D.C. Cir. 1992). So defendants' renewed motion to transfer necessarily contains within it a challenge to subject matter jurisdiction.

A challenge to subject matter jurisdiction can be facial or factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009). A facial challenge asks "if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction," *id.* at 443, and the complaint need only "plausibly suggest [jurisdiction] when all reasonable inferences are drawn in the plaintiff's favor," *Spuhler v. State Collection Serv., Inc.*, 983 F.3d 282, 285 (7th Cir. 2020) (quotation omitted). A related principle holds that a court may not "resolve factual disputes in the course of determining whether subject matter jurisdiction is proper . . . when the factual disputes

---

[3] Defendants "incorporate by reference" "ECF Nos. 53, 58." ECF 62 at 2. Defendants likely meant to incorporate ECF 43, their original motion to transfer, and Plaintiff States proceed on that assumption.

5

are intertwined with the merits." *Perttu v. Richards*, 605 U.S. 460, 472 (2025). So "indirect attacks on the merits" are treated "as 12(b)(6) motions rather than 12(b)(1) motions." *Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 1986). As in a facial attack on jurisdiction, then, "courts must assume the truth of the allegations in the complaint." *Boim*, 9 F.4th at 558.

A factual challenge to jurisdiction, in contrast, arises "once a defendant proffers evidence that calls the court's jurisdiction into question." *Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999). Here, defendants submitted evidence alongside their motion in the form of a putative administrative record, ECF 44, but it was limited to documents regarding the CDC grants and did not include documents from OMB, non-CDC components of HHS, DOT, DHS, or FEMA. In a proper factual challenge, any "contested factual assertions" are reviewed under a preponderance of the evidence standard. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540, 543 (7th Cir. 2006); *see also Spuhler*, 983 F.3d at 285. Because the allegations supporting Plaintiff States' theories of jurisdiction in the operative, amended complaint have been corroborated by evidence and because defendants have not responded with any contrary evidence, Plaintiff States prevail regardless of how defendants' challenge is construed.

## IV. ARGUMENT

Plaintiff States do not plead contract claims seeking money damages from the United States but instead plead APA and constitutional claims to set aside and enjoin an OMB policy: the Targeting Directive. Those claims fall squarely within both the statutory waiver of sovereign immunity found at 5 U.S.C. § 702 and this Court's equitable jurisdiction to enforce the Constitution. The CFC, on the other hand, would have no jurisdiction over the complaint that Plaintiff States filed. Transfer under 28 U.S.C. § 1631 should be denied.

6

**A.      The Court has jurisdiction over this entire action.**

This Court has jurisdiction, so the motion to transfer must be denied. *See Cordova-Soto v. Holder*, 732 F.3d 789, 792 (7th Cir. 2013) (transfer under § 1631 authorized only "[w]hen jurisdiction is absent"). This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this case arises under federal law. The only question of possible jurisdictional significance is whether Plaintiff States' claims fall into an exception to sovereign immunity. They do. Plaintiff States' claims fall within both the statutory waiver of sovereign immunity, found at 5 U.S.C. § 702, and this Court's longstanding equitable jurisdiction to enjoin unconstitutional acts.

The argument that defendants prioritize—Plaintiff States have an "adequate remedy" in the CFC under 5 U.S.C. § 704, ECF 43-1 at 21–27—does not even go to jurisdiction. The elements of an APA cause of action found in § 704 do not affect the scope of sovereign immunity. *See Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 775 (7th Cir. 2011). So defendants' § 704 argument need not be considered at this time. In any event, it also fails.

**1.      The § 702 waiver of sovereign immunity applies to this action.**

Section 702 of the APA waives the federal government's sovereign immunity as to any "action in a court of the United States seeking relief other than money damages" provided that no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see generally Michigan*, 667 F.3d at 774–75. Plaintiff States do not seek "money damages," and the Tucker Act does not impliedly forbid relief, so the waiver applies to this action.

**a.      Plaintiff States do not seek money damages.**

To start, this action does not seek "money damages" within the meaning of § 702. Defendants do not contend otherwise; they limit their § 702 argument to the "impliedly forbids" prong found in § 702(2). *See* ECF 43-1 at 27–29. So defendants have waived any argument as to the "money damages" prong of § 702. *See Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043,

1050 (7th Cir. 2025) (sovereign immunity is subject to waiver); *Meyers v. Oneida Tribe of Indians of Wis.*, 836 F.3d 818, 822 (7th Cir. 2016) (same).

Even setting their waiver aside, this suit does not seek "money damages." Under *Bowen v. Massachusetts*, 487 U.S. 879 (1988), "the critical question is whether the plaintiff seeks substitute or specific relief." *Mittelstadt v. Perdue*, 913 F.3d 626, 632 n.20 (7th Cir. 2019). Section 702 thus does not authorize money judgments against the United States as "compensation for an injury," but it allows orders to pay money "*as the entitlement* under a grant program." *Columbus Reg'l Hosp. v. Fed. Emergency Mgmt. Agency*, 708 F.3d 893, 896–97 (7th Cir. 2013) (emphasis in original). Here, Plaintiff States seek only specific declaratory and injunctive relief to protect their continued participation in federal grant programs. *See* ECF 51 at 50–51. A claim does not become one for money damages merely "because success on the merits may obligate the United States to pay the complainant." *Kidwell v. Dep't of Army*, 56 F.3d 279, 284 (D.C. Cir. 1995). The Court may enjoin a federal agency's unlawful "refusal to reimburse the State" without thereby commanding prohibited "money damages." *Bowen*, 487 U.S. at 910.

  b.  **The Tucker Act does not "impliedly forbid" relief pursuant to § 702(2).**

Defendants focus instead on the issue of whether the Tucker Act "impliedly forbids the relief which is sought." 5 U.S.C. § 702(2); *see* ECF 43-1 at 27–29. It does not. This prong bars district-court jurisdiction only if the suit "is essentially a contract action." *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004). The Supreme Court's recent stay opinions represent continuity, not change, with this longstanding rule, as both turned on the APA's "limited waiver of [sovereign] immunity." *APHA*, 145 S. Ct. at 2660; *Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam). Plaintiff States' case is not "essentially a contract action" because it does not arise from any specific contracts, but rather from

8

an agency policy—OMB's Targeting Directive to target Plaintiff States for punishing funding cuts based on retaliatory animus. The sources of rights that Plaintiff States invoke against that Directive are statutory and constitutional, not contractual. And Plaintiff States do not seek contractual remedies against the Directive but instead classic equitable relief.

The Tucker Act grants exclusive jurisdiction to the CFC over "any claim against the United States founded . . . upon any express or implied contract with the United States" exceeding ten thousand dollars, 28 U.S.C. §§ 1491(a)(1), 1346(a)(2), and "the CFC has no general power to provide equitable relief," *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 313 (2011). Courts have thus read § 702(2) to impliedly forbid an action that "is in 'its essence' contractual," whether the plaintiff seeks money (which would be available in the CFC) or injunctive relief (which would not). *Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 618–19 (D.C. Cir. 2017) (quoting *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)); *see also Dep't of Educ. v. California,* 604 U.S. at 651; *Albrecht*, 357 F.3d at 68; *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 406 (2d Cir. 2015).

Section 702(2), combined with the Tucker Act, therefore creates a jurisdictional divide between contract claims, which must go to the CFC, and traditional challenges to agency action— even agency action that guides grant-related decisions—which remain subject to the § 702 waiver in district court. *See APHA*, 145 S. Ct. at 2661 (Barrett, J., concurring) (contrasting "challenges to the grant terminations" with "vacatur of internal agency guidance"). The mere fact that a challenged policy "relate[s] to grants does not transform a challenge to that [policy] into a claim 'founded . . . upon' contract that only the CFC can hear." *Id.* (quoting 28 U.S.C. § 1491(a)(1)). If the Tucker Act is "not addressed to the type of grievance which [the plaintiff] seeks to assert," then the Act's "limitation of remedies has no bearing," and "[t]he APA's general waiver of

9

sovereign immunity instead applies." *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 220–21 (2012) (quotation omitted).

Therefore, to determine whether a case is ultimately contractual in nature, and impliedly forbidden by § 702(2), courts examine "the source of the rights upon which the plaintiff bases its claims, and upon the type of relief sought (or appropriate)." *Megapulse, Inc.*, 672 F.2d at 968; *see also Evers v. Astrue*, 536 F.3d 651, 657–58 (7th Cir. 2008) (favorably citing this test); *Atterbury*, 805 F.3d at 406 (same). Defendants' motion to transfer does not even mention this longstanding test, which the Supreme Court's recent stay opinions have not purported to disturb. Both factors show that this action is not a contract dispute.

               i.        *Plaintiff States' claims are based on statutory and constitutional rights.*

First, the sources of Plaintiff States' rights are statutory and constitutional provisions that prohibit OMB's issuance of the Targeting Directive; Plaintiff States allege no breach of contract or right to sue based on any contract. *See* ECF 51 at ¶¶ 180–224 (pleading claims under the Tenth Amendment, state sovereignty, the separation of powers, the Spending Clause, and the APA). Plaintiff States properly invoke this Court's jurisdiction, and their rights under the APA and the Constitution, to challenge "arbitrary and capricious action," "action in excess of statutory authority," and action violating "separation of powers principles" and "the Constitution's Spending Clause," which are "precisely the type[s] of claims that belong" in this Court. *Colorado v. U.S. Dep't of Health & Hum. Servs.*, 788 F. Supp. 3d 277, 296 (D.R.I. 2025). Their claims, in other words, track the challenge to an agency policy that *APHA* allowed to proceed in district court. *See* 145 S. Ct. at 2661 (Barrett, J., concurring) ("[T]he District Court was likely correct to conclude that it had jurisdiction to entertain an APA challenge to the guidance . . . .").

Defendants' attack on this Court's jurisdiction hinges on ignoring the allegations in Plaintiff States' complaint. The amended complaint pleads agency action at OMB—the Targeting Directive—the review of which would lie in this Court. ECF 51 ¶¶ 56–75. If defendants acknowledged these allegations, their argument would collapse, because this Court clearly has jurisdiction over the Directive, under both *APHA* and longstanding Tucker Act precedent. *See APHA*, 145 S. Ct. at 2661 (Barrett, J., concurring) (a challenge to agency action lies in district court even though it "relate[s] to grants"); *Megapulse*, 672 F.2d at 969 ("[W]e do not accept the Government's argument that the mere existence of such contract-related issues must convert this action to one based on the contract."). So defendants disregard what they call "the self-styled theory of the claims," ECF 43-1 at 26, and instead dispute whether they, in fact, took agency action distinct from simple grant terminations, *e.g.*, *id.* at 28 (suggesting that this suit is "a disguised breach-of-contract claim").

The Court should reject defendants' attempt to reframe this case as a challenge to a specific set of CDC grant terminations, no matter which legal standard governs. If defendants' motion constitutes a facial attack on jurisdiction, then the allegations in the complaint are more than sufficient to support jurisdiction: The complaint pleads that OMB issued the Targeting Directive to the other defendant agencies, commanding them to subject Plaintiff States to retaliatory funding cuts, ECF 51 ¶ 2, and the Directive, "***so far*** put into effect by HHS, USDOT, DHS, and their components, stems from the President's threats throughout the month of January to stop 'making any payments to sanctuary cities or States having sanctuary cities,'" *id.* ¶ 75.

Alternatively, defendants' insistence that "[t]he relevant final agency action here is CDC's termination of grants," ECF 43-1 at 31, can be understood as "an attack on the *merits* of [Plaintiff States'] claim," *Boim*, 9 F.4th at 557 (emphasis in original). That is, defendants deny that the

11

Targeting Directive, even if it existed, would be reviewable under the APA. But "jurisdiction cannot be defeated by the possibility that plaintiff may not have stated a cause of action," so a veiled merits attack can succeed only "where [the] claim is wholly insubstantial and frivolous." *Malak*, 784 F.2d at 279 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). When jurisdiction and the merits are thus intertwined, it is error to "constru[e] the defendants' motion as a factual attack on subject matter jurisdiction." *Boim*, 9 F.4th at 558; *see also Perttu*, 605 U.S. at 472; *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024); *Torres-Negron v. J & N Recs., LLC*, 504 F.3d 151, 163 (1st Cir. 2007). Instead, the court must "presume the truth of the allegations" and "take the facts in the light most favorable to the [plaintiffs]." *Boim*, 9 F.4th at 558. Under this standard, as in a facial challenge to jurisdiction, Plaintiff States' allegations as to the Targeting Directive establish jurisdiction in this Court.

Finally, even if the Court construed defendants' motion as a properly raised factual challenge to jurisdiction, the record evidence thus far only confirms Plaintiff States' allegations, with no contrary evidence produced. That evidence, credited by the Court, shows that OMB established an across-the-board, prospective policy that strips HHS funding from disfavored States as retaliation for unrelated policies. *See, e.g.*, ECF 55-3 at 22 (OMB_000021) (OMB Chief of Staff ordering HHS to "send a list" and offering "further instruction"); *id.* at 187 (CDC_001419) (HHS to OMB promising that "[w]e are ready to execute once direction, and approval is given").[4] "[T]he reasonable inference is that the Office of Management and Budget directed HHS to cut funding for plaintiffs by February 1 because plaintiffs were on a list of states with sanctuary jurisdictions." ECF 63 at 4. Defendants' motion raises no "contested factual assertions," *Meridian*, 441 F.3d at

---

[4] Plaintiff States provided the entire body of evidence supporting this conclusion, as well as detailed argument, in connection with their preliminary injunction motion. *See* ECF 56 at 14–18; 57-1; 57-2. Because the Court has already reviewed and credited this evidence (which has not been controverted by defendants), Plaintiff States summarize and incorporate these materials by reference.

540, about how OMB has directed the other agencies—DOT, DHS, and FEMA—and there is thus no need to resort to record evidence on that subject. In any event, the available evidence confirms Plaintiff States' allegations as to the Directive at those agencies, too. Key OMB communications sent between January 22 and 25, 2026, went to nearly the entire federal government, including DOT and DHS. *See* ECF 55-3 at 24–26 (OMB_000023–25); *id.* at 158–59 (CDC_001390–91); ECF 72-2 ¶¶ 9, 31 & pp. 14–15. And the same OMB press announcement that forecasted CDC cuts also predicted "more than $943 million" in cuts at DOT. *See* ECF 55-3 at 100–01 (CDC_001332–33).[5] FEMA's release of hundreds of millions of dollars in hazard mitigation funds in late February and early March conspicuously excluded Plaintiff States, *see* ECF 57-3, and again that fact was disclosed to the press.[6] Defendants have produced no evidence to the contrary: their discovery production was limited to CDC (and related OMB communications).

In sum, Plaintiff States have viable non-contract claims against an OMB directive to the other defendant agencies that singled out Plaintiff States for retaliatory funding cuts unrelated to the purposes for which Congress authorized and appropriated those funds. That reality easily distinguishes both *Department of Education v. California*, 604 U.S. 650, and the non-binding Fourth Circuit decision on which defendants rely, *see* ECF 58 at 24 (citing *Sols. in Hometown Connections v. Noem*, 165 F.4th 835 (4th Cir. 2026)). In those cases, unlike this one, courts found no agency action separate from the grant terminations themselves. *See Dep't of Educ. v. California*, 604 U.S. at 650 (staying a TRO "enjoining the Government from terminating various education-related grants"); *Hometown Connections*, 165 F.4th at 843 ("[T]hese claims for relief are grounded

---

[5] *See also* Josh Christenson, *White House Instructs DOT, CDC to Cut $1.5B in Grants for Dem States, Citing 'waste and mismanagement,'* N.Y. Post (Feb. 4, 2026), https://nypost.com/2026/02/04/us-news/white-house-instructs-dot-cdc-to-cut-1-5b-in-woke-green-grants-for-dem-states/.

[6] Rachel Frazin, *FEMA releasing billions in disaster assistance, while further funds await approval*, The Hill (Feb. 27, 2026), https://thehill.com/policy/energy-environment/5759529-billions-in-fema-funds-awarded/.

only on alleged contractual obligations to fund their grants . . . ."). Plaintiff States' claims here, on the other hand, challenge an upstream agency action, predating any terminations, that violates substantive statutes, the APA, and the Constitution.

### ii. Plaintiff States do not seek contractual remedies.

Second, Plaintiff States' suit does not seek contractual remedies, meaning "money past due under a contract, or specific performance of a past due monetary obligation." *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–11 (2002). Plaintiff States seek only equitable remedies: vacatur of the Targeting Directive under 5 U.S.C. § 706 and declaratory and injunctive relief prohibiting its implementation. *See* ECF 51 at 50–51. "[T]he essence of a Tucker Act claim for monetary relief," in contrast, is "damages for the Government's past acts." *Mottaz*, 476 U.S. at 851. Only prospective relief—not performance of past-due obligations—could provide Plaintiff States the protection they seek from OMB's Directive, which could be implemented at additional agencies or subagencies at any time. For example, with regard to HHS, defendants attempted to implement a second round of grant terminations at CDC, also averted by this Court's TRO. *See* ECF 51 ¶¶ 5, 107–113. Record evidence also shows that OMB is planning cuts at other HHS components or "operating divisions." ECF 55-3 at 2–21, 27–28 (OMB_000001–20, 26–27); ECF 72-2 ¶¶ 11, 20–22. And with regard to DOT and FEMA, Plaintiff States could not possibly be seeking contractual remedies, because there *is no underlying contract* at issue; rather, Plaintiff States allege that defendants have unlawfully *refused* to make new obligations to them. *See* ECF 51 ¶¶ 118, 146. So, here again, defendants' failure to dispute Plaintiff States' allegations as to the Directive and its implementation is fatal to their attack on this Court's jurisdiction.

The possibility that equitable relief would have downstream effects on certain contracts in Plaintiff States does not convert this case into one for contractual remedies. *See APHA*, 145 S. Ct. at 2661 (Barrett, J., concurring). When an agency issues an unlawful policy, a district court may

14

enjoin the agency from taking "steps to implement, apply, or enforce" that policy. *Massachusetts v. Nat'l Institutes of Health*, 164 F.4th 1, 6, 9 (1st Cir. 2026). And it remains a "basic reality," also recognized by the Justices who dissented in *APHA*, that "after a court sets aside an agency action, a natural consequence may be the release of funds to the plaintiff down the road." *Dep't of State v. AIDS Vaccine Advoc. Coal.*, 145 S. Ct. 753, 756 (2025) (Alito, J., dissenting). That potential consequence does not retroactively transform normal APA relief into a contractual remedy.

Finally, this action has never, as to any funding stream, sought "*past* due sums." *Great-W. Life*, 534 U.S. at 212 (emphasis in original). Defendants' first attempted terminations of CDC grants, effective February 12, 2026, had not even occurred when the complaint was filed on February 11. ECF 51 ¶¶ 101–103. So this suit did not challenge "past grant terminations" that had "already happened." *City of Chicago v. U.S. Dep't of Homeland Sec.*, 815 F. Supp. 3d 727, 747 (N.D. Ill. 2025). "[J]udicial authority depends on the state of affairs when a case begins," not "how things turn out." *Bush v. United States*, 100 F.4th 807, 812 (7th Cir. 2024); *see Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) (jurisdiction determined "as of the date of the filing of the suit"). Once a district court gains jurisdiction, that jurisdiction "is not defeated by subsequent events." *Chi. Typographical Union v. Chi. Sun-Times, Inc.*, 935 F.2d 1501, 1508 (7th Cir. 1991). Otherwise, parties could never be certain they are "before a tribunal" capable of "render[ing] a judgment in their case." *Id.* Because Plaintiff States brought this action on February 11, the day before any attempted terminations, sovereign immunity posed no conceivable barrier at filing, and it cannot later spring back into existence.

In sum, this action is not "in its essence contractual," *Perry Cap.*, 864 F.3d at 619, under the recent holding in *APHA* and the longstanding *Megapulse* factors. So the Tucker Act does not "impliedly forbid" any relief that Plaintiff States seek. 5 U.S.C. § 702(2).

15

> **2.** **This Court has jurisdiction over Plaintiff States' constitutional counts in equity, with or without reliance on § 702.**

This Court's jurisdiction is doubly secure over Plaintiff States' constitutional theories, ECF 51 ¶¶ 180–208, which do not depend on the § 702 waiver of sovereign immunity. That statutory waiver was enacted in 1976, *see* Pub. L. 94-574, 90 Stat. 2721 (1976), and it provides one sure basis for jurisdiction over the constitutional counts. *See Michigan*, 667 F.3d at 775 (the § 702 waiver "is not limited to claims brought pursuant to the review provisions contained in the APA itself" but also applies "in cases involving constitutional challenges"). But this Court also has equitable jurisdiction, long predating the 1976 waiver, to enjoin official conduct that is "constitutionally void." *Dugan v. Rank*, 372 U.S. 609, 621–22 (1963). "[E]stablished practice . . . sustain[s] the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Bell*, 327 U.S. at 684. "The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England." *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). Sovereign immunity *never* barred such actions: "[R]esort to equity for protection is not to be defeated upon the ground that the suit is one against the United States." *Philadelphia Co. v. Stimson*, 223 U.S. 605, 619 (1912).

Plaintiff States' constitutional theories in the Court's equitable jurisdiction therefore do not implicate § 702(2) and the Tucker Act. Section 702 provides that "*[n]othing herein . . .* confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702(2) (emphasis added). This language does not purport to extend sovereign immunity to new classes of suits that did not depend on § 702's waiver in the first place. If the plain text were not enough, legislative history points in the same direction. The House Committee Report explained: "The proposed legislation would amend [§ 702] so as to

<div align="center">16</div>

remove the defense of sovereign immunity as a bar to judicial review of federal administrative action otherwise subject to judicial review." H.R. Rep. 94-1656, at 1 (1976). Section 702 did not expand sovereign immunity in any respect but rather served to "eliminate" it. *Id.* at 3.[7] So the constitutional counts may and should proceed in equity.

Defendants contend that the constitutional counts are not viable under *Dalton v. Specter*, 511 U.S. 462 (1996), *see* ECF 43-1 at 26–27, but that is not a jurisdictional argument. *Dalton* addresses when and how an action "in excess of statutory authority" also constitutes a "violation of the Constitution." 511 U.S. at 472. Plaintiffs who cannot succeed under *Dalton* merely "lack a cause of action to bring their freestanding constitutional claim." *Glob. Health Council v. Trump*, 153 F.4th 1, 17 (D.C. Cir. 2025). But "the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Shapiro v. McManus*, 577 U.S. 39, 45 (2015) (quoting *Bell*, 327 U.S. at 682). So the *Dalton* argument is inapposite to defendants' motion to transfer for want of jurisdiction under 28 U.S.C. § 1631.

In any event, defendants' merits argument based on *Dalton* would also fail. In *Dalton*, the President had explicit statutory authority to close military bases and did just that. 511 U.S. at 465–66. In that setting, the Supreme Court rejected the notion that "every claim alleging that the President exceeded his statutory authority [can be] considered a constitutional claim." *Id.* at 474. But "*Dalton* did not hold that a plaintiff lacks a cause of action for a constitutional claim merely because the underlying conduct implicates a statute." *Chicago*, 815 F. Supp. 3d at 750. *Dalton*'s holding applies where a statute confers upon the President "unfettered discretion" over a discrete question. *Sierra Club v. Trump*, 929 F.3d 670, 696 (9th Cir. 2019). Here, no statute does, or even

---

[7] *See also* Admin. Conf. of the United States, Statutory Reform of the Sovereign Immunity Doctrine, Recommendation 69-1 (Oct. 21, 1969) ("The 'doctrine of sovereign immunity' should be . . . limited where it blocks the right of citizens to challenge in courts the legality of acts of governmental administrators."), https://www.acus.gov/document/statutory-reform-sovereign-immunity-doctrine.

could, authorize targeting four States with punitive, retroactive funding decisions. Indeed, the Constitution would prohibit Congress from empowering the President to attach retroactive conditions to federal funds, *see Pennhurst State Sch. & Hosp. v Halderman*, 451 U.S. 1, 25 (1981), or to deliberately target Plaintiff States based on their unrelated sovereign choices, *see Shelby County v. Holder*, 570 U.S. 529, 550–51 (2013), even if Congress wished to. Plaintiff States have raised legitimate constitutional claims, and this Court has jurisdiction to hear them.

### 3. The § 704 elements are not jurisdictional and, in any event, Plaintiff States have no adequate remedy in the Court of Federal Claims.

Defendants' primary argument is that this court lacks jurisdiction over the APA claims because there is an adequate remedy in the Court of Federal Claims. *See* ECF 43-1 at 21–27. But this is incorrect for at least two reasons. First, as the Seventh and D.C. Circuits have explained, the elements of a claim under the APA—which are contained in § 704 and include whether the plaintiff would have "no other adequate remedy"—are not jurisdictional but instead go to the merits of an APA claim. Defendants' extensive argument grounded in § 704 does not implicate this Court's jurisdiction and should be ignored for purposes of the motion to transfer. *See, e.g.*, *Council for Opportunity in Educ. v. U.S. Dep't of Educ.*, 2026 WL 120984, at *9 (D.D.C. Jan. 16, 2026) (rejecting agency's attempt to "repackage[] its Tucker Act challenge" as argument that "adequate alternative remedies" existed). Second, even if the "no other adequate remedy" requirement were jurisdictional rather than an element of an APA claim, the CFC *cannot* provide an adequate remedy for the injury the Targeting Directive will cause to Plaintiff States.

First, "because the APA is not a jurisdiction-conferring statute, the elements of a claim under the APA, including exhaustion, are not jurisdictional." *Dhakal v. Sessions*, 895 F.3d 532, 538 n.9 (7th Cir. 2018) (quotation and alterations omitted). In particular, "the conditions of § 704 . . . do not limit the waiver of [sovereign] immunity in § 702's second sentence." *Michigan*, 667

18

F.3d at 775; *see also Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 187 (D.C. Cir. 2006) (same). So the "adequate remedy bar" found in § 704 only "determines whether there is a cause of action under the APA, not whether there is federal subject matter jurisdiction." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 143 F.4th 518, 527 (D.C. Cir. 2025) (quoting *Perry Cap.*, 864 F.3d at 621) (alteration omitted).

Defendants rely on a handful of Federal Circuit cases that have called the § 704 elements jurisdictional, *see Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1327 (Fed. Cir. 2004); *Consol. Edison Co. of N.Y. v. United States*, 247 F.3d 1378, 1382 (Fed. Cir. 2001), but this Court is not bound by those cases. Although appeal from a ruling on the motion to transfer would lie to the Federal Circuit, 28 U.S.C. § 1292(d)(4)(A), the Federal Circuit itself holds that "[w]hen considering issues which are not unique to our jurisdiction we defer to the law of the regional circuit." *Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574 (Fed. Cir. 1996); *see also Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1117 (Fed. Cir. 2003) (same). Whether § 704 constricts federal subject matter jurisdiction is not a question unique to the Federal Circuit but rather one relevant to all APA litigation, so the Seventh Circuit's holdings control.

The dated Federal Circuit cases on which defendants rely are also likely no longer good law. The Supreme Court has recently and repeatedly clarified "that 'jurisdiction' means a tribunal's adjudicatory competence, not whether a litigant has an ironclad defense." *Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274 (7th Cir. 2017); *e.g.*, *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("This Court has endeavored in recent years to bring some discipline to the use of the term 'jurisdictional.'") (quotation omitted). Consistent with that precedent, the Federal Circuit has held in more recent cases that § 704 does not impose jurisdictional limits. *See Automated Merch. Sys., Inc. v. Lee*, 782 F.3d 1376, 1379 (Fed. Cir. 2015) (expressing skepticism that the

19

"final agency action" requirement is jurisdictional); *Delano Farms Co. v. Calif. Table Grape Comm'n*, 655 F.3d 1337, 1344, 1347 (Fed. Cir. 2011) (holding that the § 702 waiver "is not limited to 'agency action' or 'final agency action,' as those terms are defined in the APA" and limiting *Christopher Village* to its facts). For that matter, *Christopher Village* itself merely predicted how the *Fifth* Circuit would rule on the § 704 issue, 360 F.3d at 1329, due to procedural history that *Delano Farms* mildly called "complex," 655 F.3d at 1347.

Second, in any event, there would be no adequate remedy in the CFC here. Defendants invent a three-part test for the question, with no citation to legal authority. ECF 43-1 at 21. Defendants' test focuses on whether Plaintiff States could sue on a contract in the CFC, and their discussion is limited to the first-round CDC grants. *See id.* at 21–22. But *Bowen* squarely rejected defendants' argument that a "naked money judgment" provides sufficient remedy to States participating in cooperative-federalism programs. 487 U.S. at 905. "[T]he doubtful and limited relief available in the Claims Court is not an adequate substitute for review in the District Court." *Id.* at 901. The Supreme Court's recent stay opinions have not cast any doubt on *Bowen*'s § 704 holding, as it has not been at issue in those cases. *E.g.*, *APHA*, 145 S. Ct. at 2672 (Jackson, J., concurring) ("Recognizing that *Bowen* forecloses a § 704-based argument, the Government points instead to § 702."). Therefore, *Bowen*'s clear holding still controls on the § 704 "adequate remedy" issue. Because Plaintiff States "do not seek contractual relief, . . . APA review is an appropriate remedy for [their] claims." *Ass'n for Educ. Fin. & Policy, Inc. v. McMahon*, 2026 WL 523023, at *10 (D.D.C. Feb. 25, 2026).

**B.      The Court of Federal Claims would lack jurisdiction over this action.**

Because this court has jurisdiction over this action, it need not reach the question of whether the Court of Federal Claims would, too. Nevertheless, the CFC clearly would lack jurisdiction here, which independently forecloses transfer under 28 U.S.C. § 1631. *See Christianson v. Colt*

20

*Indus. Operating Corp.*, 486 U.S. 800, 818 (1988) (the origin court may transfer to a court "that has jurisdiction"); 15 Fed. Prac. & Proc. Juris. § 3842 (4th ed.) ("Obviously, then, the transferee must have subject matter jurisdiction over the matter."). Here, the CFC would lack jurisdiction over the entire complaint, which does not plead contract claims but instead seeks equitable relief against agency policies. Moreover, if the CFC would lack jurisdiction over any portion of this action, then the CFC would lack jurisdiction *entirely*. 28 U.S.C. § 1500 prohibits the CFC from hearing claims concurrently with the district courts and makes a partial transfer impossible. Defendants are thus wrong on both the substance of their motion and their requested remedy of full or partial transfer. Simply put, dismissal without prejudice—not transfer under § 1631—would be the only available result if the Court found that it lacked jurisdiction over any aspect of this suit.

### 1.     The Court of Federal Claims would lack jurisdiction.

The Court of Federal Claims "lacks the general federal question jurisdiction of the district courts [that] would allow it to review [an] agency's actions and to grant relief pursuant to the [APA]." *Crocker v. United States*, 125 F.3d 1475, 1476 (Fed. Cir. 1997). The CFC also lacks "the general equitable powers of a district court to grant prospective relief." *Bowen*, 487 U.S. at 905. In consequence, the CFC could not adjudicate Plaintiff States' complaint, which is directed at an agency policy and seeks equitable relief against that policy. *See supra* pp. 7–15. More specifically, the existence of an agency action that injures Plaintiff States—the Targeting Directive—would deprive the CFC of jurisdiction, even when a case involves contracts. In *Taylor Energy Co. v. Department of the Interior*, 990 F.3d 1303 (Fed. Cir. 2021), the plaintiff expressly pleaded a breach of contract claim, but it also asked for vacatur of an agency decision that had construed the contract to its detriment, *id.* at 1306–07, 1310. The APA claim—even though it was directly tied to a contract—deprived the CFC of jurisdiction: "[J]udicial review of [agency] decisions may proceed only in district court under the APA." *Id.* at 1310. "[T]he Claims Court may not award any

21

'adequate relief' . . . when there is a controlling and contrary [agency] decision, as is the case here." *Id.* at 1311. Once again, to advocate for CFC jurisdiction, defendants must ultimately contend that OMB simply issued no reviewable Targeting Directive.

A narrower analysis of the affected funding leads to the same result. The transfer statute asks specifically whether this action "could have been brought" in the CFC "*at the time it was filed.*" 28 U.S.C. § 1631 (emphasis added). So, congruent with the general rule that jurisdiction is assessed at the time of filing, the Court must ask whether Plaintiff States could have sued in the CFC on February 11, 2026. *See Chen v. Gonzales*, 435 F.3d 788, 790 (7th Cir. 2006). On February 11, none of the relevant CDC grants had even been terminated. *See* ECF 44-9 at 50 to ECF 44-10 at 238 (CDC_000850–001238) (final date of budget periods and periods of performance truncated to February 11, 2026). Plaintiff States could not have filed a contract claim in the CFC at that time based on non-existent "grant terminations." Furthermore, under the amended complaint, a majority of this lawsuit in dollar terms does not even relate to CDC grants. This suit now also concerns more than $943 million in frozen funds at DOT, with no obligated contracts, ECF 51 ¶¶ 114–118, and billions more FEMA funds held in a similar state of limbo, *id.* ¶¶ 137–146; ECF 56 at 37 & n.23. Defendants do not even argue that Plaintiff States could file a CFC complaint about the targeted obligation delays at DOT and FEMA—indeed, Plaintiff States could not.

Finally, it is especially clear that the CFC would lack jurisdiction over Plaintiff States' constitutional counts. Defendants argue that Plaintiff States *could* file their constitutional counts in the CFC, ECF 43-1 at 25–26, but they never mention the key doctrinal phrase: "money-mandating." Although the Tucker Act encompasses claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department," 28 U.S.C. § 1491(a)(1), the

22

Supreme Court has construed this language narrowly to mean only sources of law that "'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" *United States v. Mitchell*, 463 U.S. 206, 217 (1983) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)). "In the parlance of Tucker Act cases," such sources of law are called "money-mandating." *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1364 (Fed. Cir. 2021) (quotation omitted). "[A] Tucker Act plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *In re United States*, 463 F.3d 1328, 1333 (Fed. Cir. 2006).

"[S]o-called money-mandating provisions are uncommon," *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 324 (2020), and none of Plaintiff States' constitutional theories qualify. "The standard example is the Fifth Amendment's takings clause, which in so many words requires the government to award 'just compensation' when it takes private property for a public use." *United States v. Norwood*, 602 F.3d 830, 834 (7th Cir. 2010). The Export Clause is another example. *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1373 (Fed. Cir. 2000). But Plaintiff States' constitutional claims do not arise from "money-mandating" provisions. *See Milgroom v. United States*, 651 F. App'x 1001, 1005 (Fed. Cir. 2016) (Tenth Amendment not money-mandating); *Stephens v. United States*, 165 Fed. Cl. 341, 348 (Ct. Cl. 2023) (same); *Jaye v. United States*, 781 F. App'x 994, 997–98 (Fed. Cir. 2019) (same as to separation of powers); *Tasby v. United States*, 91 Fed. Cl. 344, 346 (Ct. Cl. 2010) (same); *S.F. Unified Sch. Dist. v. AmeriCorps*, 784 F. Supp. 3d 1280, 1294 (N.D. Cal. 2025) (same as to Spending Clause).

Defendants, in short, sweep under the rug the insurmountable doctrinal barrier that Plaintiff States would confront if they attempted to seek money for these constitutional violations in the CFC. The case defendants cite, *Holley v. United States*, 124 F.3d 1462 (Fed. Cir. 1997), only

23

proves the point. It explains the basic framework that defendants ignore: "Tucker Act jurisdiction requires . . . that there be a separate money-mandating statute [or constitutional provision] the violation of which supports a claim for damages against the United States." *Id.* at 1465. There was such a source of law in *Holley*, the military-pay statute. *Id.* To be sure, the CFC may rule on a constitutional issue that does not "stand alone" but is merely "a factor in the claim for which Tucker Act jurisdiction is established." *Id.* at 1466. That does not describe the constitutional violations pleaded by Plaintiff States, which are not "factor[s] in" any underlying contractual claim. ECF 51 ¶¶ 180–208. "The source of these claimed rights is thus the Constitution, not any grant award," so jurisdiction lies in the district court. *Vera Inst. of Just. v. U.S. Dep't of Just.*, 805 F. Supp. 3d 12, 25 (D.D.C. 2025); *see also Maine v. Nat'l Oceanic & Atmospheric Admin.*, 2026 WL 1005094, *10 (D. Me. Apr. 14, 2026) (holding that constitutional rights, including under the Tenth Amendment, "are based fundamentally in the Constitution and are independent of the Award's specific provisions").

### 2. Partial transfer would be legally impossible.

Defendants have moved to transfer this entire action, despite offering no argument or evidence whatsoever regarding the non-CDC components of the case. Thus, even if the Court were to disagree with Plaintiff States on nearly all of the foregoing discussion, the only remedy to which defendants could be entitled would be a *partial* transfer—and such a transfer would be legally impossible.

The reason is 28 U.S.C. § 1500, which prohibits CFC jurisdiction over claims that share a nucleus of operative fact with claims already at issue in an earlier-filed district court action. *See* 28 U.S.C. § 1500 (barring CFC jurisdiction "of any claim for or in respect to which" another suit is "pending"); *Brandt v. United States*, 710 F.3d 1369, 1379 n.7 (Fed. Cir. 2013). "Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on

24

substantially the same operative facts, regardless of the relief sought in each suit." *Tohono O'Odham Nation*, 563 U.S. at 317. This test for overlapping "claims" comports with the Seventh Circuit's typical definition of "claim" as "the set of operative facts that produce an assertable right in court." *St. Augustine Sch. v. Underly*, 78 F.4th 349, 352 (7th Cir. 2023). As a result, in most circumstances, "28 U.S.C. § 1500 requires a party to elect between proceeding in the district court and proceeding in the claims court." *Columbus Reg'l Hosp.*, 708 F.3d at 897.

Concurrent jurisdiction would be impossible here. This suit involves a single nucleus of operative fact: OMB's Targeting Directive and its implementation at the other defendant agencies, from which all Plaintiff States' theories of relief arise. *See* ECF 51 ¶¶ 185, 194–195, 202, 212, 220. This Court therefore could not grant a partial transfer to the CFC of only particular theories of relief, such as the APA counts. A "claim" is not ordinarily the "theory of relief," meaning the "legal source" by which the plaintiff justifies judgment in its favor, "whether a constitution, statute, precedent, or administrative law." *St. Augustine Sch.*, 78 F.4th at 352.

To illustrate, the district court attempted a partial transfer in Cook County's tax dispute with the United States, purporting to transfer Takings Clause counts to the CFC while ruling on the merits of other counts. *See United States v. Cnty. of Cook*, 170 F.3d 1084, 1086–87 (Fed. Cir. 1999). The Federal Circuit held that § 1500 prohibited this split result. Because "[b]oth counts clearly arise out of the same operative facts," they were "the same for purposes of § 1500," and "that statute precluded jurisdiction over the transferred claims in the [CFC]." *Id.* at 1091. "The district court therefore erred in ordering the transfer of [the Takings Clause counts] to the [CFC]." *Id.* The Seventh Circuit, in a separate appeal of the counts that had remained in the Northern District of Illinois, reached the same conclusion: "It is doubtful that the district court has transferred 'an action,' for a legal theory is not an 'action' or even a claim for relief . . . ; moreover,

25

the partial transfer is problematic under 28 U.S.C. § 1500." *United States v. Cnty. of Cook*, 167 F.3d 381, 384 (7th Cir. 1999).

Therefore, the only available results are to retain jurisdiction or, if the Court concluded that it lacked jurisdiction over some portion of the case, to dismiss that part without prejudice, because § 1631 authorizes transfer only where the transferee court would have jurisdiction. *See Christianson*, 486 U.S. at 818. Indeed, Justice Barrett's concurrence in *APHA* recognized that, due to § 1500, a plaintiff with legal theories belonging to both fora "will have to proceed sequentially rather than simultaneously." *APHA*, 145 S. Ct. at 2662 (Barrett, J., concurring). In other words, such a plaintiff would need to wait for judgment in the district court and then, if possible, pursue further remedies in the CFC. Plaintiff States are not in that position because no part of their complaint is barred by sovereign immunity. *See supra* pp. 7–18. But, if the Court held otherwise as to some part of the case, then dismissal of that portion of the case without prejudice would be the appropriate remedy.

## C.     The interest of justice factor is not relevant.

The "interest of justice" factor only becomes relevant "when federal courts find that they lack jurisdiction." *North v. Ubiquity, Inc.*, 72 F.4th 221, 228 (7th Cir. 2023); *see also Squillacote v. United States*, 747 F.2d 432, 439 (7th Cir. 1984) ("proper analysis is to determine first whether a want of jurisdiction exists; second, whether transfer would be in the interest of justice") (citing *Hempstead Cnty. & Nev. Cnty. Project v. U.S. E.P.A.*, 700 F.2d 459, 462 (8th Cir. 1983)). "Once a court determines that there is a 'want of jurisdiction,'" then the "interest of justice" factor "gives the court discretion to transfer or to dismiss without prejudice." 15 Fed. Prac. & Proc. Juris. § 3842. The Court need not reach this part of the § 1631 analysis because this Court has jurisdiction and the CFC would lack it.

26

**D.      If this Court intended to dismiss or transfer in part, Plaintiff States would request supplemental briefing as to the effect on the existing injunction.**

If the Court for any reason reached a result that, in the Court's view, required dismissal or transfer of part of this case, Plaintiff States would request opportunity to be heard in writing—before any order is entered—about the effect of the specific dismissal on the existing preliminary injunction. The Court has already held preliminary relief to be warranted, without any reliance on "review of grant-termination decisions." ECF 63 at 2. So, under a wide range of scenarios, Plaintiff States would likely have arguments for continued preliminary relief, and the Court should order supplemental briefing on that topic.

## V. CONCLUSION

Defendants' renewed motion to transfer should be denied in its entirety.

Dated: April 23, 2026

<div style="display:flex">
<div>

**ROB BONTA**
*Attorney General of California*

By: */s/ Harald H. Kirn*
R. MATTHEW WISE*
KATHLEEN BOERGERS
*Supervising Deputy Attorneys General*
HARALD H. KIRN
CHRISTOPHER KISSEL*
CARTER JANSEN*
DAVID GREEN*
*Deputy Attorneys General*
California Office of the Attorney General
1300 I Street
Sacramento, CA 95814
916-210-6111
Harald.Kirn@doj.ca.gov
Christopher.Kissel@doj.ca.gov
Carter.Jansen@doj.ca.gov
David.Green@doj.ca.gov

*Counsel for the State of California*

</div>
<div>

**KWAME RAOUL**
*Attorney General of Illinois*

By: */s/ R. Henry Weaver*
CARA HENDRICKSON
*Executive Deputy Attorney General*
KATHARINE ROLLER
*Complex Litigation Counsel*
SARAH HUNGER
*Deputy Solicitor General*
MATTHEW FREILICH
SHERIEF GABER
MOLLY MAUCK
AKANKSHA SHAH
R. HENRY WEAVER
BRIANNA YANG
*Assistant Attorneys General*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000
Cara.Hendrickson@ilag.gov
Katharine.Roller@ilag.gov
Sarah.Hunger@ilag.gov
Sherief.Gaber@ilag.gov
Molly.Mauck@ilag.gov
Robert.Weaver@ilag.gov

*Counsel for the State of Illinois*

</div>
</div>

28

**PHILIP J. WEISER**
*Attorney General of Colorado*

By: */s/ David Moskowitz*
DAVID MOSKOWITZ
*Deputy Solicitor General*
SARAH H. WEISS
*Senior Assistant Attorney General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov
Sarah.Weiss@coag.gov

*Counsel for the State of Colorado*

**\*** Pro Hac Vice Forthcoming

**KEITH ELLISON**
*Attorney General of Minnesota*

By: */s/ Katherine Bies*
KATHERINE BIES
ED STOCKMEYER
*Assistant Attorneys General*
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101
(651) 300-0917
Katherine.Bies@ag.state.mn.us
Ed.Stockmeyer@ag.state.mn.us

*Counsel for the State of Minnesota*