**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

STATE OF ILLINOIS, *et al.*,

      Plaintiffs,

v.

RUSSELL VOUGHT, in his official capacity
as Director of the Office of Management and
Budget, *et al.*,

      Defendants.

Civil Action No. 26-cv-1566

<u>**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION TO
TRANSFER TO THE COURT OF FEDERAL CLAIMS**</u>

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 2

    I.    The Adequate Remedy Bar Straightforwardly Eliminates the APA's Waiver ................... 2

        A.    The adequate remedy bar is jurisdictional here because Federal Circuit law controls. .. 3

        B.    Plaintiffs have an adequate remedy because money is available through the Court of Federal Claims ................................................................................................................ 4

        C.    Plaintiffs have an adequate remedy because money is available through the Court of Federal Claims ................................................................................................................ 8

    II.    Even Setting the Adequate Remedy Bar Aside, Implied Preclusion Bars Jurisdiction ...... 9

    III.    Plaintiffs Cannot Defeat Transfer Otherwise ...................................................... 11

        A.    Constitutional Claims ................................................................................................ 11

        B.    Court of Federal Claims Jurisdiction ........................................................................ 12

    IV.    Plaintiffs' Allegations Against The Department of Transportation and Department of Homeland Security Do Not Alter The Analysis ......................................................... 13

    V.    Partial Transfer Is Available ................................................................................ 15

CONCLUSION ................................................................................................................ 17

## TABLE OF AUTHORITIES

**Cases**

*Am. Sci. & Eng'g, Inc. v. Califano*,
571 F.2d 58 (1st Cir. 1978) ........................................................................................ 9

*Armstrong v. Exceptional Child Ctr., Inc.*,
575 U.S. 320 (2015) ................................................................................................ 12

*Boaz Hous. Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) ........................................................................... *passim*

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) .................................................................................................. 5

*Brazos Elec. Power Coop., Inc. v. United States*,
144 F.3d 784 (Fed. Cir. 1998) .............................................................................. 2, 9

*Cascade Pac. Int'l v. United States*,
773 F.2d 287 (Fed. Cir. 1985) ............................................................................. 7, 13

*Christopher Vill., L.P. v. United States*,
360 F.3d 1319 (Fed. Cir. 2004) ......................................................................... 1, 6, 8

*Columbus Reg'l Hosp. v. United States*,
990 F.3d 1330 (Fed. Cir. 2021) ............................................................................. 3, 4

*Consol. Edison Co. of N.Y. v. United States*,
247 F.3d 1378 (Fed. Cir. 2001) ..................................................................... 1, 3, 6, 12

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
655 F.3d 1337 (Fed. Cir. 2011) ................................................................................ 3

*Dep't of Educ. v. California*,
604 U.S. 650 (2025) ......................................................................................... 9, 10, 17

*Franconia Assocs. v. United States*,
536 U.S. 129 (2002) .............................................................................................. 7, 13

*Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002) .............................................................................................. 5, 10

*Griffin v. United States*,
590 F.3d 1291 (Fed. Cir. 2009) ............................................................................... 16

*Holley v. United States*,
124 F.3d 1462 (Fed. Cir. 1997) ............................................................................. 7, 13

*In re United States*,
463 F.3d 1328 (Fed. Cir. 2006) ............................................................................. 13

*Lujan v. G & G Fire Sprinklers, Inc.*,
532 U.S. 189 (2001) ................................................................................................ 7

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) .............................................................................................. 15

*Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*,
567 U.S. 209 (2012) ................................................................................................ 9

*Me. Cmty. Health Options v. United States*,
590 U.S. 296 (2020) ................................................................................................ 5

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982) ................................................................................ 9

*Nat'l Ctr. for Mfg. Scis. v. United States*,
114 F.3d 196 (Fed. Cir. 1997) ................................................................................ 5

*Nat'l Inst. of Health v. Am. Pub. Health Assoc.*,
145 S. Ct. 2658 (2025) ........................................................................ 10, 11, 16, 17

*Philbert v. United States*,
779 F. App'x 733 (Fed. Cir. 2019) ....................................................................... 16

*San Juan City Coll. v. United States*,
391 F.3d 1357 (Fed. Cir. 2004) .............................................................................. 4

*Sanders v. United States*,
252 F.3d 1329 (Fed. Cir. 2001) .............................................................................. 4

*South Carolina v. United States*,
221 F. Supp. 3d 684 (D.S.C. 2016) ........................................................................ 4

*Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*,
480 F.3d 1116 (Fed. Cir. 2007) .................................................................... *passim*

*Sustainability Inst. v. Trump*,
No. 25-1575, 2025 WL 1587100 (4th Cir. June 5, 2025) ..................................... 12

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) .............................................................................. 12

*Trump v. Boyle*,
145 S. Ct. 2653 (2025) .......................................................................................... 10

*Tucson Airport Auth. v. Gen. Dynamics Corp.*,
  136 F.3d 641 (9th Cir. 1998) ....................................................................... 9, 12, 13

*U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*,
  770 F. Supp. 3d 155 (D.D.C. 2025) ................................................................. 11

*United States v. Cnty. of Cook, Ill.*,
  170 F.3d 1084 (Fed. Cir. 1999) ................................................................. 15, 16

*United States v. Tohono O'Odham Nation*,
  563 U.S. 307 (2011) ................................................................................. 16, 17

*Up State Fed. Credit Union v. Walker*,
  198 F.3d 372 (2d Cir. 1999) ............................................................................ 9

*We the People Found., Inc. v. United States*,
  485 F.3d 140 (D.C. Cir. 2007) ....................................................................... 11

**Statutes**

5 U.S.C. § 704 ....................................................................................................... 3

28 U.S.C. § 1292(d)(4)(A) ................................................................................... 15

28 U.S.C. § 1292(d)(4)(B) ................................................................................... 13

28 U.S.C. § 1331 ................................................................................................... 12

U.S.C. § 1500 ....................................................................................................... 15

**Rules**

Fed. R. Civ. P. 54(b) ............................................................................................ 14

**INTRODUCTION**

Pursuant to a critical procedural mechanism meant to maintain "a relatively watertight barrier" between the Court of Federal Claims and district courts, *Suburban Mortg. Assocs., Inc. v. U.S. Dep't of Hous. & Urb. Dev.*, 480 F.3d 1116, 1122 (Fed. Cir. 2007), Defendants moved to transfer this case, which fundamentally seeks the continued flow of Federal funds. In response, Plaintiffs protest that they "appealed to *this* Court's jurisdiction by filing a complaint arising from the [Targeting] Directive." ECF No. 82 at 2. In other words, Plaintiffs protest that their amended allegations "dress[] up a claim for money as one for equitable relief." *Suburban Mortg. Assocs.*, 480 F.3d at 1124. The allegation of a "directive" is nothing more than an omnibus and generalized way of reframing a demand for the restoration of terminated contracts. But clever pleading "will not remove the claim from Tucker Act jurisdiction." *Id.* "This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims." *Consol. Edison Co. of N.Y. v. United States*, 247 F.3d 1378, 1385 (Fed. Cir. 2001).

At base, "the thrust of th[is] suit is to obtain money from the United States." *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1328 (Fed. Cir. 2004). And while Plaintiffs "fram[e] [their] complaint in the district court as one seeking injunctive, declaratory or mandatory relief" from an alleged directive, that means nothing in the eyes of Federal Circuit doctrine. *See id.* Plaintiffs seek to maintain grant agreements with the United States so that they can continue receiving a stream of funds from the U.S. Treasury. That they have chosen to style their Complaint as continuing the stream of funds through enjoining a directive does not detract from this reality. The Federal Circuit "customarily look[s] to the substance of the pleadings rather than their form."

1

*Brazos Elec. Power Coop., Inc. v. United States*, 144 F.3d 784, 787 (Fed. Cir. 1998). And the substance here is simple: Plaintiffs want money from their agreements, and they want it now.

Plaintiffs' arguments seek to avoid this outcome by asking this Court to apply any law but the Federal Circuit's. They ask the Court to ignore Federal Circuit law on adequate remedy, despite its interlocutory appeal authority. They invite the Court to apply a permissive version of the *Megapulse* test that the Federal Circuit has not. And they urge the Court to rely on a smattering of district court cases piercing the watertight barrier the Federal Circuit has so carefully policed, rather than the overwhelming authority that Defendants cited from the controlling Circuit. But Congress created the Court of Federal Claims to decide when the United States must pay monies from cancelled agreements. The Federal Circuit warned years ago of a "cottage industry among lawyers attempting to craft suits, ultimately seeking money from the Government, as suits for declaratory or injunctive relief without mentioning the money." *Suburban Mortg. Assocs.*, 480 F.3d at 1124. And the resulting precedent firmly establishes that this case must go to the Court of Federal Claims.

## ARGUMENT

### I.      The Adequate Remedy Bar Straightforwardly Eliminates the APA's Waiver

Plaintiffs barely challenge Defendants' lead argument—that Plaintiffs have an adequate remedy in the Court of Federal Claims. ECF No. 82 at 18-20; ECF No. 43-1 at 13-19. As Defendants explained in their motion, the Federal Circuit has built a body of caselaw for when there is an adequate remedy in the Court of Federal Claims. And Plaintiffs' case falls squarely within that precedent.

2

### A. The adequate remedy bar is jurisdictional here because Federal Circuit law controls.

Congress expressly limited APA review to situations where "there is no other adequate remedy in a court." 5 U.S.C. § 704. The Federal Circuit has squarely held this to be jurisdictional because it implicates a waiver of sovereign immunity. *Consol. Edison Co.*, 247 F.3d at 1383; *Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1344 (Fed. Cir. 2011) (recognizing the same); *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1353 (Fed. Cir. 2021) (continuing to rely on the adequate remedy bar). Plaintiffs can point to no Federal Circuit case abrogating those holdings.

Recognizing that they cannot win under Federal Circuit law, Plaintiffs ask this Court to ignore its precedents. ECF No. 82 at 19. The adequate remedy bar and its effect on Court of Federal Claims jurisdiction is at the heart of why Congress required all interlocutory appeals to go to the Federal Circuit. *Suburban Mortg. Assocs.*, 480 F.3d at 1124 ("To ensure uniform adjudication of all Tucker Act issues in a single forum, when Congress established interlocutory review of these jurisdictional disputes it assigned the Federal Circuit exclusive jurisdiction over such appeals."). And that is why it went without comment in *Suburban Mortgage* that the motion to transfer from the district court for lack of jurisdiction was properly resolved on the adequate remedy bar and Federal Circuit doctrine. *Id.* at 1118.

Indeed, consider the Court's explanation in *Suburban Mortgage* about the importance of policing the adequate remedy bar's jurisdictional nature in these kinds of cases:

> Our cases, and Congress's purpose in giving this court jurisdiction over these interlocutory appeals, dictate that the better course is to ask first whether the cause is one over which the Court of Federal Claims has jurisdiction under the Tucker Act. The analysis begins, then, with the question raised by 5 U.S.C. § 704—is there an "adequate remedy" in a court other than the district court, that is, can the Court of Federal Claims provide an adequate remedy under the Tucker Act for the alleged wrong?

3

> One reason for beginning the analysis with the "adequate remedy" issue is that its resolution often will be dispositive. If the suit is at base a claim for money, and the relief available through the Court of Federal Claims under the Tucker Act—a money judgment—will provide an adequate remedy, the inquiry is at an end. There is no need to address the § 702 "money damages" limitation because § 704 precludes adjudication under the APA. A number of cases have recognized the value in this approach.

*Id.* at 1125.

Review of this, or any other related opinion of the Federal Circuit, will show Plaintiffs' argument otherwise cannot be countenanced. Indeed, district courts considering motions to transfer routinely recognize that the adequate remedy bar is jurisdictional under the law of the Federal Circuit and then apply that jurisdictional holding. *See, e.g.*, *South Carolina v. United States*, 221 F. Supp. 3d 684, 694-95 (D.S.C. 2016) (Childs, J.). Accordingly, this Court must apply the law of the Federal Circuit.

**B. Plaintiffs have an adequate remedy because money is available through the Court of Federal Claims.**

In a single paragraph, Plaintiffs attempt to rebut the comprehensive argument that Defendants set forth explaining why an adequate remedy exists. ECF No. 82 at 20. Their attempt falters. First, "federal grant agreements a[re] contracts when the standard conditions for a contract are satisfied, including that the federal entity agrees to be bound." *Columbus Reg'l Hosp.*, 990 F.3d at 1338. Plaintiffs do not challenge the fact that the grants here are contracts for these purposes.

Second, the contracts here are enforceable with money damages. *See Sanders v. United States*, 252 F.3d 1329, 1334 (Fed. Cir. 2001); *San Juan City Coll. v. United States*, 391 F.3d 1357, 1361 (Fed. Cir. 2004). Plaintiffs are unable to dispute this proposition either. Indeed, Plaintiffs could recover for future monies due on the contracts in the event of a successful suit for breach. *See Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1369-71 (Fed. Cir. 2021). That the grantee

4

would also have been required to perform its obligations under the contract does not alter this fact. *Id.*

Third, Plaintiffs' claims are fundamentally based on the premise that Defendants should keep paying funds pursuant to the grant agreements. That suffices. *See Nat'l Ctr. for Mfg. Scis. v. United States*, 114 F.3d 196, 199 (Fed. Cir. 1997) ("[Courts] look to the true nature of the action[.]" (cleaned up)). Plaintiffs only dispute this final point by invoking *Bowen* for the proposition that a naked money judgment cannot be an adequate remedy in this context. Pls.' Resp. at 20 (citing *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988)). Their argument is fatally flawed.

The *Bowen* "suit was not merely for past due sums, but for an injunction to correct the method of calculating payments going forward." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002). "[T]he Court's focus was on the statutory requirements set forth in this complex grant program—nowhere in *Bowen* did the Court make reference to the existence of any specific contract or express agreement defining the relationship between the parties." *Suburban Mortg. Assocs.*, 480 F.3d at 1127; *see also Me. Cmty. Health Options v. United States*, 590 U.S. 296, 326 (2020) (explaining that Massachusetts in *Bowen* "sued for prospective declaratory and injunctive relief to clarify the extent of the Government's ongoing obligations under the Medicaid program"). As a result, "*Bowen* has no bearing on the unavailability of an injunction to enforce a contractual obligation to pay money past due." *Great-West*, 534 U.S. at 212.

Indeed, the Federal Circuit has explicitly limited *Bowen* to "a specific set of circumstances that are not present in most cases[.]" *Suburban Mortg. Assocs.*, 480 F.3d at 1127 (citation omitted). To do otherwise would allow "a leak" in the barrier between the district courts and the Court of Federal Claims "to become a gusher." *Id.* at 1122. The differences are numerous and dispositive. This case is not about calculating the statutory sums for a "complex, ongoing relationship between

5

plaintiff and the Government," but rather to maintain challenged grants with specific obligated sums. *Id.* at 1127. Moreover, "[u]nlike the Medicaid program with its shifting populations and demographics, advancing medical technologies, unforeseeable health threats, and varying state and federal economic conditions, the relationship between [Plaintiffs] and the United States features a known and fixed series of [grants]" that Plaintiffs seek to maintain. *Consol. Edison Co.*, 247 F.3d at 1383-84. Finally, while the Court in *Bowen* was uncertain whether the Court of Federal Claims could hear the relevant statutorily calculated reimbursement claim, "[t]he Court of Federal Claims has long possessed jurisdiction to consider" claims that a party is due sums under a contract and that breach or imminent breach was improper. *Id.* at 1384.

Taken together, *Bowen*'s unique and narrow rule does not apply here. Plaintiffs seek continued monetary payments, defined by contracts, because they think the Government improperly stopped payments or was imminently going to do so. That is a quintessential dispute for the Court of Federal Claims. And while they might not be entitled to the identical remedies that they seek in Federal district court, the Court of Federal Claims can provide "essentially the remedy [they] seek[]." *Suburban Mortg. Assocs.*, 480 F.3d at 1126. "[T]he thrust of th[is] suit is to obtain money from the United States[,]" and Plaintiffs have an adequate remedy in the proper forum. *See Christopher Vill.*, 360 F.3d at 1328 (quoting *Consol. Edison*, 247 F.3d at 1385). That the remedy is sufficiently adequate is good enough.

It is also clear that the Court of Federal Claims can hear the substance of Plaintiffs' claims here. Plaintiffs "in essence . . . seek[] to obtain the financial benefit of a prior contract-based obligation that allegedly has not been honored by the Government[,]" *Suburban Mortg. Assocs.*, 480 F.3d at 1126, asserting that funding terminations have already taken place or are imminent. These are classic breach of contract claims that belong in the Court of Federal Claims. *See, e.g.,*

6

*Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) (noting Court of Federal Claims jurisdiction over anticipatory breaches); *Cascade Pac. Int'l v. United States*, 773 F.2d 287, 293 (Fed. Cir. 1985) (same). Claims that contract terminations violated a statute or regulation are also typically litigated in the Court of Federal Claims. *Boaz Housing Auth.*, 994 F.3d at 1362-68.

Claims that contract terminations violated the Constitution are also properly in the Court of Federal Claims. Consider, for example, "a claim that a government agency has violated a party's right to due process by refusing performance under a contract." *Suburban Mortg. Assocs.*, 480 F.3d at 1128. The substance of the right derives from the Fifth Amendment's Due Process Clause. So the claim is styled as a constitutional—not a contractual—entitlement. Yet, in the context of a suit seeking to require continued payments, a due process claim "is substantively indistinguishable from a breach of contract claim." *Id.* Therefore, an adequate remedy lies in the Court of Federal Claims. *Id.*; *see Lujan v. G & G Fire Sprinklers, Inc.*, 532 U.S. 189, 198 (2001) (recognizing that there is no due process violation when a breach of contract action is available). Other constitutional claims may similarly give rise to recovery in the Court of Federal Claims. *Holley v. United States*, 124 F.3d 1462, 1466 (Fed. Cir. 1997) ("The presence of a constitutional issue does not erase the jurisdiction of the Court of Federal Claims based on a properly brought claim under the Tucker Act, or bar the court from considering the constitutional issue in the course of determining whether the [challenged action] was wrongful."). In other words, the Court of Federal Claims may determine that a breach was unlawful for a variety of reasons—whether because of an asserted contractual, statutory, regulatory, or constitutional entitlement—and provide the remedy fundamentally sought here, which is money.

At base, "[t]he relief sought [here] was to require the Government to perform its contract obligations so that [Plaintiffs] could get the money allegedly due [] under the [grant] agreement."

*Suburban Mortg. Assocs.*, 480 F.3d at 1117. "[D]espite [Plaintiffs'] valiant effort to frame the suit as one for declaratory or injunctive relief, this kind of litigation should be understood for what it is." *Id.* at 1118. And "an adequate remedy . . . precludes an APA waiver of sovereign immunity in other courts." *Christopher Vill.*, 360 F.3d at 1327 (citation omitted).

### C. Clever framing cannot defeat the adequate remedy bar.

Plaintiffs' overarching counter to the mountain of Federal Circuit precedent is that by positing the existence of a "Targeting Directive" rather than focusing on the grant agreements themselves, they can artfully avoid the Court of Federal Claims. As the Court described it in its order on the preliminary injunction, the Targeting Directive is "[t]he Office of Management and Budget's directive to HHS to target plaintiffs for funding cuts." Order, ECF No. 63 at 5. The Court found it likely that "[t]he Office of Management and Budget directed immediate action on the list of grants on February 4" and framed its relief around that action. *Id.* Plaintiffs' attempt at clever framing will not survive Federal Circuit review. If accepted, it would pierce the barrier between the district courts and Court of Federal Claims in the most banal way. Across cases, the Federal Circuit has rejected attempts to force the continuation of contracts through clever pleading mechanisms, or new creative language. The "cottage industry" has been consistently barred from "ultimately seeking money from the Government" in new and unique ways. *Suburban Mortg. Assocs.*, 480 F.3d at 1124.

Consider what it would mean to countenance Plaintiffs' strategy. On their view, it is perfectly proper for this Court to require the continued disbursement of funds under contract because they seek to "vacate" a decision preceding the actual final agency action of termination. If true, virtually any suit could be structured to satisfy this new path past the Court of Federal Claims. For example, a standard Federal contractor need only bring a suit seeking to "vacate" the

8

"directive" from a supervisor to the contract officer authorizing the termination of the contract. Or, better yet, a suit could seek to "vacate" the decision of the contracting officer to ask for authority to terminate the contract in the first place. Any contract termination necessarily includes a moment of agency action to consider whether to terminate, seek authorization for termination, and then finally terminate a contract. The Federal Circuit would never accede to such legalistic wordplay when it is the "the substance of the pleadings rather than their form" that matters. *Brazos Elec. Power Coop*, 144 F.3d at 787. This case is about contracts and money; no amount of wordsmithing can overcome that fact.

## II. Even Setting the Adequate Remedy Bar Aside, Implied Preclusion Bars Jurisdiction

The adequate remedy bar is dispositive here. But there is an independent reason that jurisdiction is precluded. The APA's waiver of sovereign immunity fails "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Dep't of Educ. v. California (California)*, 604 U.S. 650, 651 (2025) (quoting 5 U.S.C. § 702). This exception "prevents plaintiffs from exploiting the APA's waiver to evade limitations on suit contained in other statutes[,]" *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 215 (2012), as Plaintiffs attempt here.

It is true that the regional circuit courts often follow the test set out in *Megapulse, Inc. v. Lewis* to determine whether the Tucker Act impliedly precludes relief in a given case. 672 F.2d 959, 968 (D.C. Cir. 1982); *see, e.g.*, *Tucson Airport Auth. v. Gen. Dynamics Corp.*, 136 F.3d 641, 647 (9th Cir. 1998); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 377 (2d Cir. 1999); *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 63 (1st Cir. 1978). That test asks the court to consider "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse*, 672 F.2d at 968 (citation omitted). However, the Federal Circuit has

9

resolved APA versus Tucker Act disputes on the adequate remedy bar. It has declined to address the *Megapulse* two-part inquiry, as that test only pertains to the implied preclusion bar. *Suburban Mortg. Assocs.*, 480 F.3d at 1128.

Without *Megapulse* and its progeny, this Court should look to the Supreme Court's recent cases in *California* and *Nat'l Inst. of Health v. Am. Pub. Health Assoc.,* 145 S. Ct. 2658 (2025) (*NIH*). As Defendants previously explained, ECF No. 43-1 at 19-21, the Supreme Court in *California* reviewed a district court order that had "enjoin[ed] the Government from terminating various education-related grants" and "require[d] the Government to pay out past-due grant obligations and *to continue paying [grant] obligations as they accrue.*" *California*, 604 U.S. at 650 (emphasis added). In other words, the district court both required the reinstatement of terminated grants and barred further withholding. But the Supreme Court held that the district court likely lacked jurisdiction because the APA's waiver of sovereign immunity "does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* at 651 (quoting *Great-West*, 534 U.S. at 212). *California* "squarely control[s]" this materially identical case. *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025).

The *NIH* decision confirmed this approach, as previously explained. *See* ECF No. 43-1 at 20-21. Critically, the Targeting Directive, as formulated by Plaintiffs here, does not fall within Justice Barrett's concurrence discussing agency "guidance." *NIH,* 145 S. Ct. at 2661-62. In that opinion, Justice Barrett noted that certain agency guidance documents can be vacated under the APA in district court, while terminations must go to the Court of Federal Claims. *Id.* There "vacating the guidance d[id] not necessarily void decisions made under it[.]" *Id.* at 2661. Under those circumstances, the guidance and terminations could be separated. "The claims [we]re legally distinct." *Id.*

10

That is not true here. Plaintiffs have pled a directive that, by their own framing, consists of ordering immediate terminations. *See* Order, ECF No. 63 at 5. Unlike in *NIH*, the alleged Targeting Directive here flowed directly into the termination of grants—there was no legally distinct separation. *Contra NIH*, 145 S. Ct. at 2661-62 (Barrett, J., concurring). As Justice Barrett recognized, "if the CFC has exclusive jurisdiction over the grant terminations, the plaintiffs cannot end-run that limit simply by packaging them with a challenge to agency guidance." *Id.* (cleaned up). Plaintiffs have done exactly that here. The Supreme Court's pronouncements cannot be so easily circumvented.

At bottom, when the relief sought is to continue disbursing contract funds, the claims belong in the Court of Federal Claims. "[T]he agency action that [Plaintiffs] ask[] the Court to reverse is the Government's decision to cease a financial relationship." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 165 (D.D.C. 2025). Here, Plaintiffs seek to require continued contract funding. Under *California*, *NIH*, and first principles, that is impliedly precluded by the Tucker Act.

### III.    Plaintiffs Cannot Defeat Transfer Otherwise

#### A.  Constitutional Claims

Plaintiffs' constitutional claims do not defeat the sovereign immunity bar. While those claims do not reference the APA, they are nonetheless subject to the adequate remedy and implied preclusion bars of the APA and Tucker Act. Indeed, a plaintiff asserting constitutional claims will generally explicitly rely on the APA's sovereign immunity waiver. *See, e.g.*, *We the People Found., Inc. v. United States*, 485 F.3d 140, 143 (D.C. Cir. 2007) (Kavanaugh, J.) (recognizing that a "standalone" First Amendment claim relies on the APA's Section 702 waiver). The waiver is subject to the adequate remedy and implied preclusion bars—dooming Plaintiffs here. *See, e.g.*,

11

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limitations."); *Sustainability Inst. v. Trump*, No. 25-1575, 2025 WL 1587100, at *2 (4th Cir. June 5, 2025) ("[I]t appears unlikely that Plaintiffs' ultra vires claims, which allege the Government violated the Constitution when it terminated or suspended Plaintiffs' grants, would provide a detour around the Tucker Act" (citing *Armstrong*, 575 U.S. at 327-28)). Accordingly, courts routinely consider whether constitutional claims brought in cases implicating the Tucker Act are forbidden under the adequate remedy or implied preclusion bars. *See, e.g.*, *Tucson Airport Auth.*, 136 F.3d at 647 (concluding district court lacked jurisdiction over constitutional due process claim because it was contractually based); *see also, e.g.*, *Consol. Edison Co.*, 247 F.3d at 1385-86 (directing district court to transfer case sounding in contract but asserting constitutional claims to the Court of Federal Claims because the Court "can supply an 'adequate remedy' to prevent the constitutional wrongs alleged by [plaintiff]"). And because the constitutional claims here effectively seek a contractual remedy, these jurisdictional limits apply.

The Federal-question statute does not save Plaintiffs either. That statute vests district courts with jurisdiction over "all civil actions arising under the Constitution," 28 U.S.C. § 1331, but it does not waive sovereign immunity. *See, e.g.*, *Swan v. Clinton*, 100 F.3d 973, 981 (D.C. Cir. 1996). So Plaintiffs remain stuck with the limitations of the adequate remedy and implied preclusion bars.

### B. Court of Federal Claims Jurisdiction

Despite Plaintiffs' argument otherwise, the Court of Federal Claims would have jurisdiction over the transferred action. "A court's jurisdiction and a claim's merits are generally distinct inquiries." *Boaz Hous. Auth.*, 994 F.3d at 1370. For jurisdiction to exist in the Court of

Federal Claims, there need only be a nonfrivolous claim that a plaintiff is owed money pursuant to a contract. *See id.* Plaintiffs do not dispute that they have that here.

The Court of Federal Claims unquestionably has jurisdiction over claims as they relate to contracts actually terminated. It also has jurisdiction over anticipatory or imminent breaches of contract, as noted above. *Franconia Associates*, 536 U.S. at 143; *Cascade Pac. Int'l*, 773 F.2d at 293. Here, Plaintiffs challenge an "attempt[] to terminate that set of grants, with the terminations effective on February 12, the day after the complaint was filed[.]" ECF No. 82 at 3, 22. The remaining claims then seek to maintain a stream of contract funding that Plaintiffs claim they are obligated to receive—the quintessential suit in the Court of Federal Claims.

Plaintiffs' last-gasp argument is that constitutional claims are different. They do this through a simple error: relying on the "money-mandating" doctrine. ECF No. 82 at 22-24. It is true that "a Tucker Act plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." *In re United States*, 463 F.3d 1328, 1333 (Fed. Cir. 2006). But that source here is the contracts, which Plaintiffs cannot dispute as money-mandating. The Federal Circuit has repeatedly refused to permit plaintiffs to evade its jurisdiction using this precise trick, namely, arguing that a constitutional defense raised in the context of a contract mandating monies could deprive the Court of Federal Claims of jurisdiction. *See, e.g.*, *Holley*, 124 F.3d at 1466 (Fed. Cir. 1997); *Suburban Mortg. Assocs.*, 480 F.3d at 1128; *Tucson Airport Auth.*, 136 F.3d at 647. The inclusion of such claims does not deprive the Court of Federal Claims of jurisdiction.

### IV.      Plaintiffs' Allegations Against The Department of Transportation and Department of Homeland Security Do Not Alter The Analysis

Defendants moved to transfer on February 23, just days after the original complaint was filed. ECF No. 43. By statute, that immediately triggered a stay of further proceedings. 28 U.S.C.

13

§ 1292(d)(4)(B). Defendants respectfully maintain that it was error for the Court to permit Plaintiffs to amend or supplement their complaint notwithstanding the stay, and it was further error to deny Defendants' original motion to transfer as moot. *See* ECF Nos. 50, 62, 75. When faced with a timely motion to transfer—which argued that the case centers on grant agreements that no one disputes are contracts subject to immediate termination—Plaintiffs should not be permitted to belatedly add new grants concerning other Defendants and then claim that those are sufficiently "different" to defeat transfer. The Court should conclude that the statutory stay precluded amendment, and Defendants expressly preserve this issue for any appeal. *See also* Fed. R. Civ. P. 54(b) (a district court generally may revise its interlocutory orders "at any time" before entry of final judgment).

Plaintiffs in their Amended Complaint added substantially similar claims against the Department of Transportation (DOT) and Department of Homeland Security's (DHS) Federal Emergency Management Agency (FEMA). They allege that the supposed Targeting Directive not only ordered the termination of CDC grants, but also puts $943 million in DOT funds and billions in FEMA funds at risk, ECF No. 51 ¶¶ 128, 165, and suggest that these claims could not be heard in the Court of Federal Claims because the funds have not been "obligated"—*i.e.*, that the funds are not the subject of signed contracts. Pls.' Opp'n at 22, ECF No. 82. But that is at least partly at odds with their Amended Complaint, which alleges that some DOT funds at issue are "partially obligated." Am. Compl. ¶ 118. Although these claims could face ripeness issues—as Plaintiffs acknowledge, DOT "has not sent termination letters to Plaintiff States' transportation agencies in relation to these" purported future "cuts," ECF No. 51 ¶ 116—Plaintiffs make no effort to explain why such contract claims would not fall within the jurisdiction of the Court of Federal Claims.

14

In any event, if after any appeal to the Federal Circuit any claims against DOT and FEMA remain pending before this Court, Defendants reserve the right to move to dismiss them upon expiration of the statutory stay. If anything, these claims are even more tenuous than those concerning the CDC grants. Indeed, in granting preliminary relief with respect to HHS/CDC, the Court questioned whether APA review of Plaintiffs' claims against DOT and FEMA would be proper, noting that "[t]he breadth of the term [Targeting Directive] is akin to a programmatic challenge that is not subject to review under the Administrative Procedure Act. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990)." ECF No. 63 at 4. Were such claims to remain pending here, they would be subject to dismissal on these and other grounds. *Cf.* ECF No. 43.

## V.        Partial Transfer Is Available

If the Court nevertheless finds that it should exercise jurisdiction over some aspects of this case but not others, the Court may grant a partial transfer to the Court of Federal Claims, and Plaintiffs are mistaken to suggest otherwise.

By statute, the Federal Circuit has appellate jurisdiction over an appeal "from an interlocutory order of a district court . . . granting or denying, *in whole or in part*, a motion to transfer an action to the United States Court of Federal Claims." 28 U.S.C. § 1292(d)(4)(A) (emphasis added). The Federal Circuit has "read § 1292(d)(4)(A) as reflective of Congress's intention in § 1631 to permit the transfer of less than all of the claims in an action." *United States v. Cnty. of Cook, Ill.*, 170 F.3d 1084, 1089 (Fed. Cir. 1999); *see also id.* at 1089 n.6 (restating "our conclusion that § 1631 allows for the transfer of less than all of the claims in a given action").

To be sure, "[t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States." 28 U.S.C. § 1500. This means that the Court of Federal

15

Claims must dismiss claims when related claims are pending in the district court, so long as the claims "are based on substantially the same operative facts [as the claims in district court], regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). This applies to claims partially transferred to the Court of Federal Claims, *see Cnty. of Cook, Ill.*, 170 F.3d at 1091, if the plaintiff does not dismiss related claims pending in district court.

"There is no merit" to the argument that this "interpretation . . . cannot prevail because it is unjust, forcing plaintiffs to choose between partial remedies available in different courts." *Tohono O'Odham*, 563 U.S. at 316. Moreover, "[e]ven were some hardship to be shown, considerations of policy divorced from the statute's text and purpose could not override its meaning." *Id.* at 317. That is especially true where, as here, "Congress has permitted claims against the United States for monetary relief in the [Court of Federal Claims]," which "is available by grace and not by right." *Id.* The Federal Circuit has therefore found that it is "bound to follow" this rule," *Griffin v. United States*, 590 F.3d 1291, 1295 (Fed. Cir. 2009), which it regularly enforces. *See, e.g.*, *Philbert v. United States*, 779 F. App'x 733, 736-37 (Fed. Cir. 2019).

Most recently, the Supreme Court in *NIH* held that the district court had jurisdiction over some but not other claims related to "the Government's termination of various research-related grants." 145 S. Ct. at 2658. Justice Barrett explained there that "[i]f the challenges to the guidance and grant terminations have the requisite factual overlap—and I am not sure that they do—the plaintiffs will have to proceed sequentially rather than simultaneously." *NIH*, 145 S. Ct. 2658, at 2662 (Barrett, J., concurring). "But we have previously explained that the statutory scheme puts plaintiffs to precisely this choice, and we have rejected the argument that it is unfair to require

16

plaintiffs 'to choose between partial remedies available in different courts[.]'" *Id.* (quoting *Tohono O'Odham*, 563 U.S. at 316). Partial transfer is therefore available.

Here, of course, that approach is unnecessary, because Plaintiffs' recasting of what are in essence contract claims should not be accepted. As explained above, unlike in *NIH*, where there were two "distinct agency actions"—the "NIH's termination of grants and its issuance of guidance," *NIH*, 145 S. Ct. at 2661 (Barrett, J., concurring)—here, the crux of Plaintiffs' theory is that OMB directly ordered the termination of CDC grants. *See supra* pp. 10-11. But even if the Court construes things otherwise, it should at the very least transfer Plaintiffs' claim seeking the continued payment of grants that had already been noticed to Congress for termination. Anything less would be a flat violation of *NIH*. "The Administrative Procedure Act's 'limited waiver of [sovereign] immunity' does not provide the District Court with jurisdiction to adjudicate claims 'based on' the research-related grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *NIH*, 145 S. Ct. at 2658 (quoting *California*, 604 U.S. at 651); *see id.* at 2661 (Barrett, J., concurring) ("Vacating the guidance does not reinstate terminated grants.").

## CONCLUSION

This Court should grant Defendants' motion to transfer to the Court of Federal Claims.

17

Dated: May 14, 2026          Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC HAMILTON
Deputy Assistant Attorney General

ERIC B. BECKENHAUER
Assistant Director

*/s Michael Velchik*
MICHAEL VELCHIK (DC #187249)
Senior Counsel to the Assistant Attorney General
U.S. Department of Justice
950 Pennsylvania Ave
Washington DC 20530
(202) 860-8388
Email: michael.velchik@usdoj.gov

*Counsel for Defendants*

18